Den *ex dem.* Van Middlesworth *v.* Arthur Schenck.

### EJECTMENT.

A testator devises as follows :—" as touching such worldly estate wherewith it hath pleased God to bless me, I give and dispose of the same (after payment of my debts) as follows :—I give to my son Gysbert, a horse and and a mare, his choice out of all my horse kind, my wearing apparel and all my blacksmith tools. Further, I give unto my three children, namely : Hannah, Gysbert and Jean, all my remaining personal estate, share and

share alike. Further, I give unto my said son, Gysbert, all my real estate, together with a lot of land, lying and being at Raritan Landing, formerly the property of Hendrick Lane, excepting such part as I give and grant unto my two daughters, as hereafter mentioned. That is, I give to my daughter, Hannah, a certain lot of land I lately purchased of Garret Cowenover," (describing it) "Further, I give to my daughter, Hannah, a wood lot of land," (describing it.) "Further, I give to my youngest daughter, Jean, a certain lot of land," (describing it.) "Further, I give to my daughter, Jean, a certain wood lot," (describing it.) "Further, my will is, that if any of my children should happen to die without any issue alive, that such share or dividend shall be divided by the survivors of them. Further, my will is, that not any of said lots of land as given and granted to my said two daughters, shall be sold or conveyed to any person not of my family, within twenty years after my decease. And further, my will is, that my sister-in-law, Jean Breeze, shall have a decent livelihood out of my real and personal estate, both in clothing and dieting, during her widowhood, by my children above mentioned, or the survivors of them." Held that under this will Gysbert took a fee simple, defeasible on specific conditions, that if he had no issue at his death, *and* his sisters survived him, they should take the estate. When his sisters died the condition became impossible, and at that time it became an absolute fee simple in Gysbert.

---

This was an action of ejectment for lands in Somerset county. The cause was tried at the Somerset Circuit, and a verdict taken by consent for the defendant, with leave to move for a new trial upon a case stated containing the following facts :

Aurie Lane died seized of the premises in question. By his last will, dated September 7th, 1780, and duly proved, he devised as follows :—

" Touching such worldly estate wherewith it has pleased God to bless me in this life, I give, devise and dispose of the same, in the following manner and form : First, that all my lawful debts be honestly paid. Secondly, I give to my son, Gilbert, a horse and a mare, his choice out of all my horse kind. Further, I give unto my three children, namely, Hannah, Gilbert and Jean, all my remaining personal estate, share and share alike. Further, I give unto my son, Gilbert, *all my real estate*, together with a lot of land, lying and being at Raritan Landing, formerly the

property of Hendrick Lane, my uncle, excepting such part as I give and grant unto my two daughters, as hereafter mentioned. That is, I give to my daughter, Hannah, a certain lot of land, (describing it.) Further, I give to my daughter, Jean, a certain lot, (describing it.) Further, my will is, that if *any of my children should happen to die without any issue alive, that such share or dividend shall be divided by the survivors of them."* Gilbert entered upon the premises in question, after the death of the testator, and possessed the same under the will, and in 1809 conveyed the same in fee simple to Schenck, the defendant in ejectment, and in 1820 died without leaving any issue. Hannah, one of the daughters of the testator, married with John Van Middlesworth, and died, (during the lifetime of Gilbert, and before he sold the estate,) leaving four children, who are the lessors of the plaintiff.

A rule was taken to shew cause why the verdict should not be set aside, and a new trial granted. Upon the argument of the rule,

*Vroom,* for the plaintiff, said : the question for the consideration of the court was, what estate Gilbert took under the will of Aurie Lane. We contend that Gilbert took an estate in fee tail with contingent remainder and not a fee simple with executory devise and we are warranted in this construction—*first,* from the sound legal construction of the whole instrument, and *second,* from the manifest intent of the testator.

In ascertaining the legal construction, it is advisable to begin at the commencement of the will. There is nothing in the will which restrains the words to a fee simple only. We admit that under certain circumstances a fee simple may pass by the words, " *all his real estate,*" where there is nothing in the will to prove the contrary. But these words do not necessarily carry a fee, although they may have that effect. In other words, the effect of this expression must be found in other parts of the will. I shall show that these

words are susceptible of different constructions. Thus in the case of *Lambert's Lessee* .v. *Paine,* 3 *Cranch.* 130, *Judge Washington* says : " If other words be used restraining the meaning of the general expressions, so as to render it doubtful whether the testator intended to pass his whole interest or not, the rule of law which favors the right of the heir must prevail." *Judge Paterson* expresses the same idea, (*ib.* 135.) " The word, estate, in a will, amounts to a devise of the whole interest, unless unequivocal and strong expressions are added to restrict its general signification." Same opinion expressed in 2 *Ves. sen.* 614.

I conclude therefore, that these words may be restrained by subsequent words.

The estate given to Gilbert, could not have been less than a freehold. Then the next question is, what is the meaning of the words " *shall happen to die without any issue alive.*"

I contend that these words mean an indefinite failure of issue, and therefore necessarily create an estate tail in the first taker, and if an estate tail is established in Gilbert, the lessors of the plaintiff are entitled to recover. The case of *Target* v. *Gaunt,* shews the term die without issue, and the distinction between its legal and common signification. In *Cowp.* 410, *Geering* v. *Shenton, Lord Mansfield* asked *Mr. Cowper,* if he knew of any case, where upon a limitation of *lands,* upon a dying without issue, those words had been confined to a dying without issue, *living at the time of the death.* The words, dying without issue, clearly shew it to be an estate tail.

If the term here, *without issue alive,* relates to the decease of Gilbert, then an estate in fee, may be the result. But if it relates to an indefinite failure of issue, then an estate tail. *Cowp.* 234,. *Morgan* v. *Griffith ;* 1 *P. Wms.* 199, *Nicholas* v. *Hooper, note; ib. id.* 664 ; 2 *Ves. sen.* 610, *Southey* v. *Stonehouse ;* 1 *Lord Ray.* 568 ; *Cro. Car.* 448 ; *ib.* 695 ; 6 *T. R.* 307.

The estate tail being extinguished, the lessors of the plaintiff are entitled to recover as the heirs at law of Aurie Lane, as reversioners and not as devisees over.

Many cases will be produced to shew that this is an executory devise and not a contingent remainder; *Pells* v. *Brown* 2 *Cro. Ja.* 290 will be relied on. But that case is easily distinguishable from the present. ·1. The devise over was to T. and his heirs forever. 2. The words in that case expressly shew that the testator did not intend an indefinite 'failure of issue.. 3. The devise was coupled ·with the payment of an absolute sum of money. It is worthy of remark that it is a decision by the very same court who decided the case of *Chadock* v. *Cowley, Cro. Jac.* 695.

So also *Fosdick* v. *Cornel*, 1 *John.* 440 and 10 *East,* 460, *Turey* v. *Basset,* there are material differences. In the former the case was decided on peculiar circumstances. So in all the cases there is something to govern, something to vary, the general rule.

If from the other parts of the will a failure of issue at the decease of the first devisee is intended, it will create a fee, contrary to the general rule; it depends on the intention of the testator. I insist·it was the intention of the testator to entail. By no construction can the devise to the daughters be made a fee simple. " Where a contingency is limited to depend on an estate of freehold, which is capable of supporting a remainder, it shall never be construed to be an executory devise." *Purefoy* v. *Rogers,* 2 *Saund.* 380; *Doe* vs. *Morgan,* 3 *T. R.* 765. There is an estate given by this will which will support the remainder, and therefore there is no necessity of making it an executory devise. The. law does not favour executory devises; it was necessity only which gave rise to them, and that alone which continues them. I conclude, therefore, that the devise over to Hannah and Jean was a contingent remainder, to take effect on the termination of the estate tail given to Gilbert.

But as they died before Gilbert, the lessors of the plaintiff as children of one of them, and in fact heirs of the testator Aurie Lane, are entitled to the estate. Wood, on the same side, cited 1 *Bro. Ch. Ca.* 91, *Harman* v. *Dickenson ;* 6 *Cruise Di.* 282; *Tit. devise, Sec.* 32, 33; 1 *Bin.* 268; 2 *Bin.* 454.

*Ewing* and *Frelinghuysen* contended I. That the devise to Gilbert was an estate in fee simple. "I give and devise unto my son Gilbert all my real estate together with a lot of land lying and being at Raritan Landing, formerly the property of Hendrick Lane, excepting such parts as I give and grant unto my two daughters as hereafter mentioned." These words "all my real estate" especially in connection with the introductory clause shewing an intention to dispose of his whole property, create an estate in fee simple. This is a point which depends more on authority than upon reasoning. The following authorities will shew that this doctrine is settled not only in Westminster hall but in the courts of our own country. 4 *Cru. Di.* 143; *tit Devise* 22, 23; *ib.* 310, 23; 6 *Mod.* 109, *Bridgewater* v. *Bolton ;* 1 *Salk.* 236; *s. c.* 2 *P. W.* 524; *Barry* v. *Edgeworth,* 1 *T. R.* 41; 4 *ib.* 13; 4 *Day* 368; 6 *John.* 185; 2 *Caines* 345; 3 *Cranch* 97. The meaning of Judge Washington in the case of *Lambert's Lessee* v. *Paine,* 3 *Cranch* 130 has been misapprehended. He means only that these words will not carry a fee where they are so used or connected as to shew that they are intended to describe merely the subject, the land, and not to describe the quantity of interest; he does not mean to say, they may not be the basis of an estate in fee, on which an executory devise may be mounted. Doubtless they may be restrained; so may a devise to a man and his heirs; but these words are not more liable to be restrained than the most regular fee simple.

It is certain then that these words, "all my real estate," are sufficient to vest a fee simple, and that it must be so, unless there is some phrase or clause connected with these words which restrain and limit the estate.

It may be attempted to find such words or clauses. 1. The words "all my real estate" are coupled with the devise of a lot of land "together with a lot lying and being at Raritan landing."

This argument is raised on the idea that the words, all my real estate, are merely indicative of the intent of the testator, and hence other words qualify that intent. But this idea is false—the words are not mere words of intent—they are in a will technical words, and as certainly designate a fee as the word *heirs*.

If the testator, possessed of a farm in A, had said, I give my farm at A to my son and his heirs, together with the lot, &c., this addition could not abridge the force of the word heirs; neither can the addition here abridge the words " all my estate." It is apparent these words " together with the lot of land " were used without meaning, for if the words " real estate " were, as argued, mere words of description of the subject, they would be useless. Having described all, it would be senseless to describe a part. The case of *Lambert* v. *Paine*, 3 *Cranch* 97, refutes this ground of argument.

2. It may be said that these words are only descriptive of the land, for he excepts parts. Hence he means in both to describe the land, for he could not have meant to except part of the estate, but part of the land.

This reasoning is unsound. It proceeds on the erroneous idea that the words are mere words of intent. When he uses words expressive both of the lands and the estate in them, and then expressly excepts a part, nothing more results than that he intended to exclude that part from the operation of the devising words as to the rest, not that he intended to use the devising words in a sense different from their legal operation.

3. It may be argued that by our construction he gives a different estate to the daughters and the son. But he may have chosen to give one kind or duration of estate to the son and another to his daughters. Besides it is evident he

intended a difference, for he forbids the daughters from alienation out of the family within twenty years.

II. Having shown that the devise to Gilbert is an estate in fee, it remains to consider the effect and operation of the subsequent clause.

"Further, my will is, that if any of my children should happen to die without any issue alive, that such share or dividend shall be divided by the survivors of them." What is the legal effect of this clause? Does it limit the preceding estate in fee simple? Does it diminish and reduce the preceding devise? Does it bring the fee simple down to a fee tail; or does it create another estate or interest, mounted on that fee simple, and to take effect on a certain contingency? In other words does this clause make an estate in fee, with executory devise, or an estate tail, with contingent remainder?

1. This clause does not limit, qualify or reduce the original devising clause, because, by the intention of the testator, this clause relates not to the real estate, but to the personal estate only. This will be proved by a careful examination of the clause in question:—1. It relates to the share; the share is to be divided by the survivors. The testator has used this term share in regard to the personal estate, but never in reference to the real estate. Just construction requires the same word to be used in the same sense in the same instrument; and so the rule is expressly declared as to a will. *Doug.* 268. 2. This clause relates to the dividend of any of the children so dying. "The dividend to be divided." This term dividend is never used in reference to real estate. But it is in common use with respect to personal estate. It should be supposed, therefore, the testator intended its common use and signification.

2. If this clause does relate to the real estate, nevertheless an estate in fee with executory devise, and not a contingent remainder is created. It is a very trite, but yet a very true saying, that cases are of little use in the construc-

tion of wills; devises containing precisely the same words and under exactly similar circumstances are so rarely to be found, that one case can seldom form a precedent for another. Where, however, a principle has been established, that principle may be applied. There is to be found a general principle settled by the cases, which will aid us in the examination of this will. Where the devise over depends on a definite failure of issue, an estate in fee with executory devise is created, but where the devise over is made to depend on an indefinite failure of issue, a contingent remainder, limited on an estate tail is created. And the reason of the rule or principle is this : to give efficacy to the whole will, to prevent a failure of any part. An executory devise to take effect on an indefinite failure of issue cannot exist. It is at too remote a period. Where then an indefinite failure of issue is contemplated, the devise over would be defeated. Hence in such case the estate is limited to an estate tail, and the devise over is a contingent remainder in order to save the ultimate estate. But where the devise over depends on a definite, not an indefinite failure, such a construction is not necessary to save the ultimate estate, and, therefore, is not made. 2 *Saund.* 388, *a.* This subject is clearly explained by *Judge Story,* in 1 *Gallison* 458. The cases which he refers to fully support the positions he has laid down. *Pells* v. *Brown, Cro. Jac.* 590. *Porter* v. *Bradley,* 3 *T. R.* 143. *Roe* v. *Jeffery, T. R.* 589, 1 *Taunton,* 173. *Doe.* v. *Walton* 2 *B.* and *P.* 324. *Robinson* v. *Grey,* 9 *East.* 1. *Fosdick* v. *Cornell,* 1 *John.* 440. *Jackson* v. *Blanshaw* 6, 54. *Ray* v. *Enshlin,* 2 *Mass.* 554, 5 *Mass.* 500, 11 *John.* 336, 3 *Com. Dig. tit. Devise,* 431. This doctrine is very ably and luminously explained and stated by the *Chief Justice,* in the case of *Den* v. *Shepperd,* 2 *South.* 413.

Having ascertained the principle, it remains to apply it to the present case. Does the devise over, here depend on a definite or indefinite failure of issue? What is meant by

these expressions? A definite failure, is one which is fixed, determinate, which must take effect if it take effect at all, at an ascertained period; not that it is necessary the day should be anticipated, but the circumstances which designate the day or period and distinguish it from all others, should be known. An indefinite failure is one that may take place at any time, the circumstances unascertained. A contingency to take effect at the decease of a man is a definite or limited contingency, but one to take effect at any time after his decease is an indefinite or unlimited contingency. In the present case, the failure is a definite one, the contingency is a limited contingency. It must take effect if at all, at the decease of Gilbert; and not at a remote and future period, and this will be abundantly proved from the will in question. But before we argue it, certain points should be distinctly understood. 1. Whether a definite or indefinite failure of issue is a question of intent and so to be examined and investigated. *Roe* v. *Jeffery,* 7 *Term Rep.* 589. *Porter* v. *Bradley,* 3 *T. R.* 146. *Wilkinson* v. *South,* 7 *T. R.* 555. 2. The Court is always anxious to discover the intent to be a definite failure and to support the devise over. 2 *Fonb.* in note (g). 11 *Mod.* 284, in note. Let us now examine the will.

"If any of my children happen to die without any issue alive." To die without issue alive is a clear certain mode of expression. It is limited to the period of his death and can apply to no other period If he has issue living at his death, the contingency has happened. If no issue living at his death it has not happened. If he has issue living at his death, and ten years after that issue should die, it is impossible to say he died without issue alive. The period of the death then is the period at which the contingency must on the one side or the other be determined, and it is, therefore, a definite contingency.

2. This position is illustrated and enforced by the use made by the testator of the word *survivors.* If any die the

survivors shall divide. When? At the decease of the person dying. Not he or they who may be living ten years after such decease. The term *survivors* plainly points to the period of the decease, and no other or future. It is a settled rule that where this term *survivors* is used it embraces a definite and not an indefinite failure of issue. 1 *P. Wm.* 534. *Prec. Ch.* 528. *Nicholl* v. *Skinner.* We read these cases from 2 *Fearne.* 190, who introduces them as settling this rule of law. *Pells* v. *Brown, Cro. Jac.* 190. If T. died without issue, living W. his brother, then to W. These words are very analogous. Here if any die without issue alive, the survivors, or others surviving. Attempts have been made to distinguish this case. 1st. Because the devise is to heirs. 2d. A charge. 3d. The devise over, shews that an indefinite failure was not intended. 4th. There are two contingencies—dying without issue, living Wm. 2 *Mass.* 57. If either or any of my sons die without children, the survivor or survivors to hold the interest or share of each or any dying without children. 16 *John.* 382, marginal note. If either of my said sons should depart this life without lawful issue, his share or part shall go to the survivor. 20 *John.* 486 the same doctrine; and the last case 16 *John.* approved. 3 *T. R.* 143, *Porter* v. *Bradley,* if he die leaving no issue *behind him.* These words, behind him, are not so strong as *issue alive.* 7 *T. R.* 589, *Roe* v. *Jeffery,* if his grandson should *depart this life and leave no issue,* then, &c. 1 *John.* 440, *Fosdick* v. *Cornell,* if any of my said sons shall happen to die without heirs male of their bodies, then the lands shall return to the survivors to be equally divided. 11 *John.* 336, if any one or more happen to die without heirs, then his or their parts shall be equally divided among the rest of the children. 10 *John.* 16. *Kent* in this case puts the case on the word *survivors,* and says that expression rescues the case from the general rule. 1 *P. Wms.* 534, *survivor;* approved in 3 *Yates,* 223, and said to apply to real estate. 5 *Mass.* 502, *Ide* v. *Ide.*

III. Here, if it were necessary we would particularly, examine the cases cited by the adverse counsel on this branch of the argument. But it is unnecessary—for we do not run athwart of the doctrine they contain. They prove that where the devise over is after an indefinite failure of issue it is void—that the words dying without issue generally point to an indefinite failure. These positions are true. But the counsel after reading these cases are compelled to admit that after all it is a question of intent—and that if from the terms of the will it is manifest the testator meant a dying without issue at the decease of the 1st devisee there it is a definite failure, the estate is a fee simple. We think we may be excused from an examination of these cases—for this is the very basis on which we ground our cause. We have laboured to prove that such intent is here. If successfully then even by the admission of our adversaries the estate granted to G. was an estate in fee simple. 2 *Bin.* 454.

If then the estate created by the will be an estate in fee, with an executory devise, dependent on a certain contingency—or an estate in fee on a certain contingency, it remains to be examined what is the effect on this cause. We answer, the estate in fee remains—the contingent estate or devise over can never vest—because the contingency has not happened—and now can never happen. The estate in fee remains—and the grantee of Gilbert holds by virtue of the deed he has made. 1. The contingency has not happened and cannot now happen. Two events are contemplated—two circumstances must combine to constitute the contingency, or, in other words, there are two contingencies embraced in this clause. 1. Gilbert dying without issue alive. 2. The sisters of Gilbert surviving him. In this respect the adverse counsel assumed an entirely erroneous position. They insisted there was only one event on which the estate of G. came to an end—his dying without issue. But it is not so—there are two, without issue and his sisters survive him.

These sisters died in his lifetime—He is dead, and without issue alive—but they have not survived him—An absolute fee simple was given in the first instance. That estate was liable to be determined or defeated if certain events happened—Those events have not happened, and cannot now happen. The estate in fee therefore remains. The contingency has not happened, and the estate in fee remains. 11 *John.* 351; *Powel Dev.* 250, 252. But if we understand the last opening counsel correctly, he means to insist that the heirs of the daughters can take under this devise—that it is to be deemed a vested remainder and as such their heirs may take. Here, however, he is clearly in error.. 1. He is at war not only with our argument but his own, for in another branch of the argument they call it a contingent remainder. 2. The whole claim must be founded on this contingent clause; now, no person can take not even the 1st, much less the 2d, under a contingent clause, unless the contingency takes place. 3d. The devise over here is only of an estate for life, therefore they cannot take under it as heirs—a devise over to survivors without other words is only for life—proved by divers cases cited. One case has been cited by Wood 1 *Bro. C. C.* 91, but it is widely different—there was no absolute estate in the first devisee, and the devise over was to her and her issue.

One other subject or point raised or stated by the adverse counsel remains to be considered. It is said that this will creates a conditional limitation. This is but presenting the old argument in a new shape. It is a conditional limitation. So is every executory devise. What is a conditional limitation? An estate which is created, but with a provision superadded, determining that estate on condition. In all such cases the estate stands, until the condition happens or is fulfilled. In this will an estate in fee is given to Gilbert, to be limited on condition. But what is that condition? If he die without issue alive, living his sisters. There are two circumstances which must combine; and in this consists

the error of the plaintiffs' counsel, they say if he die without issue alive, then the limitation takes effect. I say no; such is not the condition. He must die without issue alive, living his sisters.

2. The estate of Gilbert passed by his deed and the lessers of the plaintiffs, cannot, therefore, recover Ellen's under the will—or as heirs of Gilbert—or as heirs of the testator.

*Wood* replied.

FORD, J. The question arising on the will in discussion is, what estate Gilbert Lane took in the devised premises? It is my opinion that he took a fee simple, defeasable on specified conditions; that if he had no issue at his death, *and* his sisters survived him, that they should take the estate.

The devise to Gilbert of all the testator's *"estate"* comprehended a fee simple, according to the principle and reason of the thing; for "estate" means *interest;* and *all the interest* of the testator must mean a fee simple if the testator had one. 1 *Salk.* 236; 2 *P. Wms.* 524; 1 *T. R.* 411; 3 *Cranch* 134.

But this fee simple was not intended to be absolute: it was qualified by conditions expressed in a subsequent clause of the will in these words: *"if any of my children should die without issue alive, such share shall be divided by the survivors of them."*

The estate of the survivors could not be intended to be a remainder after a fee simple; because a fee simple is the whole of the estate and nothing is left to go over as a remainder; for which reason a remainder can never be limited on or after a fee.

But the plaintiffs' counsel argue that the estate of Gilbert could not be a fee simple to his heirs universally and without restriction; because the estate is limited to his *"issue,"* which term signifies the heirs *of his body only;* and marks the estate intended for him to be an *estate tail* with remainder to the survivors.

One impediment to its being an estate tail with remainder is, that the remainder could not take effect in possession till after an *indefinite failure of issue;* whereas the testator had no such thing in his mind as an indefinite failure of issue ; he was only specifying *conditions,* on the occurrence whereof Gilbert's fee was to cease; the conditions being that *if* Gilbert had no issue *at his death,* and, if his sisters survived or outlived him, they should have the property. The matter resolves itself into a controversy therefore respecting the *intent of the testator.*

But the plaintiffs' counsel argue that his intent must be sought for in his *words;* and his words must be taken in the sense which the law puts upon them : that the words are *" die without issue,"* which have been understood in law to mean, always, an *indefinite failure of issue* and to import an estate tail; that the cases to this effect are numerous; and in *Den* v. *Shenton,* (*Cowp.* 410.) that Lord Mansfield intimates there is not a single case to the contrary.

If this were so I should think it dangerous to shake an interpretation that had long been settled and had become the foundation on which estates depended; but I think the premises assumed in this argument are fallacious. Not but that the cases are numerous indeed wherein the words " dying without issue " have been construed to import an estate tail; nor do I pretend to know a case where these *precise words* received any other interpretation. But the fallacy in the premises is two fold : first, in assuming the words of Aurie Lane's will to be *" die without issue;"* thereby rejecting the word *" alive,"* and also a whole branch of the sentence in these words, *"such share shall be divided by the survivors of them."* Second, that however uniform the construction has been on those precise words " dying without issue," when they stood by themselves alone, there are a number of leading cases which shew a contrary interpretation in consequence of additional words ; and also where *other parts of the will* evinced that the intent was not to

Den *ex dem*. Van Middlesworth *v*. Schenck.

create an estate tail, but to express a condition, not to mark out a line of issue, but to describe a state of issue at the death of the devisee. Thus *Dyer* 334 *a*. was a devise to the son and his heirs, and if he "die without issue *or issue fail living the testator's executors*" then to the executors. This was not decided not to be the limitation of an estate tail, and the reason is that the words describe only a state of issue *at the death of the son or during the lives of the executors*. So in *Pells* v. *Brown* (*Cro. Ja.* 590.) there was a devise to Thomas the son, in fee, and if Thomas *died without issue living William his brother*," then to William : it was holden to be no estate tail in Thomas and his issue *indefinitely ;* but to describe a *state of things at the death of Thomas,* upon the happening of which the property should go over to William. Now the will of Aurie Lane is, "if any of my children should *die* without issue *alive.*" If "dying without issue" imports an *indefinite failure ;* and dying without issue *alive* imports the same; the word "*alive*" has no operation assigned to it ; and to give a word no operatition when it is capable of one is no less than to strike it out and alter the testator's will ; yet who does not see that the word "*alive*" "refers to the devisee's *death* as the antecedent, and describes the state or condition of issue at that precise time. The meaning *naturally* and *gramatically*, and accordingly to the analogy of language is, "*if he die, without issue alive when he dies.*" It cannot mean, if he die without issue a century hence alive, unless a liberty be taken of interpolating an antecedent in lieu of that in the will. In this respect it resembles the case of *Porter* v. *Bradley* (3 *T. Rep.* 143,) where the words were, "die leaving no issue *behind him ;*" the words "behind him" were not understood to mean "at any time," but "at the time of his death."

If more were needed to show that dying without issue alive meant alive *at his death*, and not an indefinite failure or estate tail, an additional argument would be found in the

4

limitation of *survivors.* · The limitation does not express that the survivors shall take in *fee,* in *tail,* or how otherwise, but to the survivors simply ; therefore as the law stood at the date of the will they could take the property only for their lives. Can it be believed that a *life* estate, a *personal* benefit, was intended to *commence* after an indefinite failure of issue which might not happen within a century ; that the testator intended a *living* for the surviving children and yet postponed their possession of it for a century ; that he intended an estate for their enjoyment in life which might not take place till an hundred years after their death ? The supposition amounts to a contradiction bordering on absurdity. On the other hand what is more plain and natural ; that if a child had no issue *at the time of its death,* and it died in the lifetime of the other two, that the surviving children should take the estate ? If one child die without issue living or surviving the other two, is like Thomas dying without issue living William, in the case of *Pells* v. *Brown;* the cases cannot be distinguished from one another ; and it could not be doubted but the testator meant a failure of issue *at the death of the child* for the single reason (if there were none other) that the limitation over is to the *survivors for their lives.* The force of this reason has governed in almost every case where a limitation to survivors alone has ever occurred. *Roe* v. *Jeffery* (7 *T. Rep.* 589) was a devise to *T.* in fee, and if he " die and leave no issue," then to *E. S. & M.* and the *survivor or survivors* of them ; and it was holden to be an executory devise for the above reason ; life estates were given to persons in existence which were personal benefits, and the intent could not be to postpone them till an indefinite failure of issue, which might not happen in a century or till long after the persons intended to be benefitted would be dead in the course of nature. The force of this reason has swayed the ablest jurists in the United States ; I will not repeat the cases in 1 *Johns.* 440, 10 *Johns.* 16, 2 *Mass.* 63, & 5 *Mass.* 503, where limitations to *surviv-*

*ors* were holden to be executory devises for the above reason. See also 1 *T. Rep.* 507, 1 *P. Wms.* 199, 563, and 2 *Atk.* 311, where Lord Hardwick, denominates it a *strong argument.*

It is objected that an executory devise is permitted in cases only of necessity, where the provision of the will would be void as a remainder. It is true that in *Wealthy* v. *Bossville* (*Temp. Hard.* 258,) Lord Hardwick says no limitation shall be construed an executory devise if it *may be* a remainder; and in *Carwardine* v. *Carwardine* (2 *Fearn.* 12,) *Henley,* Lord Keeper said, "It was a certain rule of law, that if such a construction *could* be put on a limitation as it might take effect by way of remainder, that it should not take place as an executory devise." But what they mean by *could,* is, if it could *consistenly with the intent of the testator;* it being a certain rule that no construction shall be taken that contradicts the testator's intention; his intent is his will and must be always observed. The great rule is that such construction shall be taken as is consistent with the testator's intention; in subordination to this rule the *next* one is, that if neither construction contradicts the intent it shall be a remainder and not an executory devise. But to say it shall be a remainder in contravention of the intent and to the overthrow of the will, would be a kind of heresy that cannot be imputed to such eminent and orthodox judges.

On the whole, the estate was taken by Gilbert in fee; subject to be defeated on the happening of two contingent events; first that he should die without issue at his death; second that his sisters should survive him; when his two sisters died it became impossible that the estate should be defeated by going over to survivors when there were none; from that time it became an absolute fee simple in Gilbert, and the title held by the defendant as a purchaser under him must be good. Let there be judgment for the defendant.