IN THE

## SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW-YORK,

IN MAY TERM, 1815, IN THE THIRTY-NINTH YEAR OF OUR INDEPENDENCE.

---

## JACKSON, *ex dem.* HICKS and wife, *against* VAN ZANDT.

THIS was an action of ejectment for a farm in *Flushing*, *Queens County*. The cause was tried at the circuit in *Queens*, before Mr. Justice *Van Ness*, the 15th *June*, 1814; and a verdict was taken for the plaintiff, subject to the opinion of the court, on a case, with liberty to either party to turn the same into a special verdict.

*Thomas Hicks*, of *Flushing*, being seised of the premises in question, on the 19th *June*, 1782, made his will, by which he devised all his lands and real estate, including the premises in question, to his sister, *Mary Hicks*, and to the heirs of her body, lawfully begotten, or to be begotten, and for want or default of such issue, then he gave and devised all his said lands and real estate to *Stephen Hicks*, and to the heirs of his body lawfully to be begotten; and for want or default of such issue, then he gave and devised the same lands and real estate to *Richard Penn Hicks*, son of his cousin *William Hicks*, of

an estate in *fee simple:* and she being illegitimate, and dying without issue, the estate escheated to the people.

*The act of the legislature of the 12th July, 1782, (sess. 6. c. 2.) to abolish entails, &c. operated prospectively: and where H., who died in 1784, devised his estate to M. and the heirs of her body lawfully begotten, and for default of such heirs, to S., and the heirs of his body, &c., and for want of such heirs, to P., and the heirs of his body, &c. it was held, that the estate tail so devised to M. was, by that statute, converted into*

*Pennsylvania*, and to the heirs of his body, lawfully begotten ; and for want or in default of such issue, he devised the same estate to the right heirs of the said *Richard Penn Hicks*. *Stephen Hicks* was the husband of *Mary Hicks*, the testator's sister. The testator died seised, the 1st *January*, 1784. On his death, *Mary Hicks*, his sister, who was an illegitimate child, entered on the premises under the will, and took possession, and on the 22d *March*, 1784, died without issue, intestate, and without having made any conveyance or disposition of the premises. Upon her death, her husband, *Stephen Hicks*, took possession of the premises, and continued possessed thereof until his death. He died the 2d *December*, 1786, without issue, having, on the 12th *November*, 1786, made his will, and devised all his real estate, &c. to his niece, *Mary Hicks*, who was born the 24th *October*, 1784, and afterwards married *Jeffry Hicks*; and she and her husband are the lessors of the plaintiff.

On the 12th *July*, 1782, the legislature passed an act, (sess. 6. c. 2.) entitled " An act to abolish entails, to confirm conveyances by tenants in tail, to distribute estates real of intestates, to remedy defective conveyances to joint tenants, and directing the mode of such conveyances in future;" by which it was enacted, " that in all cases wherein any person or persons would, if this law had not been made, have been seised in fee tail of any lands, tenements, or hereditaments, such person or persons shall, in future, be deemed to be seised of the same in fee simple; and further, that where any lands, tenements, or hereditaments, shall heretofore have been devised, granted, or otherwise conveyed by a tenant in tail, and the person to whom such devise, grant, or other conveyance, shall have been made, his, her, or their heirs or assigns shall, from the time such grant or other conveyance was made, to the day of the passing this act, have been in the uninterrupted possession of such lands, tenements, or hereditaments, and claiming and holding the same, under devise, grant, or other conveyance, shall be deemed as good, legal, and effectual, to all intents and purposes, as if such tenant in tail had at the time of making such devise, grant, or other conveyance, been seised of such lands, tenements, or hereditaments, in fee simple; any law to the contrary hereof notwithstanding."

* Sess. 9. c. 12.
1 *Gr. L. N. Y.*
205.

On the 23d *February*, 1786,* an act was passed, entitled " An act to abolish entails, to confirm conveyances by tenants in tail,

to regulate descents, and to direct the mode of conveyance to joint tenants;" by which it was enacted as follows: "that all estates tail shall be and are hereby abolished; and that in all cases where any person or persons now is, or are, or if the act hereinafter mentioned and repealed had not been passed, would now be seised in tail, of any lands, &c., shall be deemed to be seised in fee simple absolute;" and "that in all cases where any person or persons would, if the said act and this present act had not been passed, or at any time hereafter, shall become seised in fee tail, of any lands, &c. by virtue of any devise, &c. heretofore made, or hereafter to be made, &c., such person or persons, instead of becoming seised thereof in fee tail, shall be deemed and adjudged to be seised thereof in fee simple absolute;" and by the seventh section of this act the former act of *July* 12, 1782, is repealed; but all descents, &c. since the passing the act repealed, are to take effect according to the act so repealed.

On the 21st *April,* 1787, the legislature passed an act entitled " An act to vest all the right and claim of the people of this state to the lands and tenements whereof *Thomas Hicks* died seised, in the persons therein named." The preamble to the act, after reciting the seisin of the testator and his will, stated, " that whereas it was represented to the legislature, that on the death of *Thomas Hicks,* the said *Mary Hicks* became seised of the lands and tenements of the testator by virtue of the said devise, but died without issue; that upon her death the said *Stephen Hicks* entered upon the same, and also died without issue; by means whereof, according to the will and intention of the testator, the lands, &c. would have vested in the said *Richard Penn Hicks,* in fee tail general, but by the operation of the late laws of this state for abolishing entails, the estate in fee tail general devised to the said *Mary Hicks* was converted into a fee simple, and that she having been born out of lawful wedlock, can have no heirs, whereby the said lands, &c., might *escheat* to the people of the state. And it being further represented, that the said *Richard Penn Hicks* is an orphan, and destitute of any support, but what is so provided by the said testator, and the legislature conceiving it just and reasonable, that the estate vested in the people of this state, by the means aforesaid, should descend according to his intention, expressed in the said will, as far as is consistent with the abovementioned laws; it is, therefore, enacted, &c. " That it shall

and may be lawful for the said *Richard Penn Hicks*, his heirs and assigns, to enter into, have, hold, and enjoy, for his and their own proper use, in fee simple, for ever, all and singular, the said lands," &c. " notwithstanding any right or claim which the people of this state may or can have or make to the same by reason of the escheat thereof, and although no office has been found respecting the same," &c. " Provided, that nothing in this act contained shall be construed to affect or injure any right, title, interest, or estate, in and to the said lands, &c. which any person or persons whomsoever would or might have, claim, challenge, or demand, if this act had not been passed ; but such estate only as the people of this state might lawfully claim, by the means aforesaid, shall vest immediately in the persons," &c. Immediately after the passing of this act, *Richard Penn Hicks* entered into possession of the premises, and continued in possession until his death, having, on the 14th *January*, 1791, a short time before his decease, devised the premises in question to *Jacob Johnson Hicks*, his brother, in fee simple ; who entered into possession thereof, and, in 1792, by his will, empowered his executor to sell his real estate, who, in 1796, after the death of the said *J. J. Hicks*, sold the lands, &c. for 8,000 dollars ; and the same premises, by sundry mesne conveyances, were conveyed to the defendant, for 25,000 dollars.

*Anthon*, for the plaintiff, contended that *Mary Hicks*, the first devisee, took either a fee simple absolute, or a conditional fee, by virtue of the statute of 1782 ; and that in either case, the title was in the lessors of the plaintiff.

The statute of 1782[*] converted all estates tail into estates in fee simple ; and the act of 23d *February*, 1786,[†] declares that all persons seised in fee tail shall be adjudged to become seised " in fee simple absolute." The first statute abolishing estates tail restored estates as they existed before the English statute *de donis conditionalibus* ; (*West*. 2. 13 *Edw*. I. c. 1.) and such estates became conditional fees, at the common law : if *Mary Hicks*, the first devisee, had had issue, the estate would have become a fee simple absolute, but as she died without issue, the land became vested in *Stephen Hicks*, the next devisee, as a fee conditional at common law ; and while he was possessed of such conditional fee, the act of the 23d of *February*, 1786, converted it into a fee simple absolute, and while seised of such estate, he devised it to *Mary*, the wife of the lessor.

* Sess. 6. c. 2.
† Sess. 9. c. 12.
1 Gr. L. N. Y.
205.

The question is, what was the operation and effect of the statute of 1782 on estates tail? We say, it converted them into *conditional* fees; and that was the reason why, in the act of 1786, the word "*absolute*" was added to the words fee simple. If this construction of that act is correct, then the land never escheated to the people, and the private act of 1787 could have no effect on the title of the lessors of the plaintiff. The act of 1782 operated only on estates then in existence, and not prospectively; but the act of 1786 is different. It declares that all persons who are, or, if the act of 1782 had not been passed, would be, seised in fee tail, shall be deemed to be seised in fee simple absolute. If after 1782, *Stephen Hicks* was seised of a fee simple absolute, the act of 1786 prevented any *escheat*, and the claim of the defendant must fail.

*Slosson* and *Hoffman*, contra. The special act of 1787, was manifestly passed with a view to vest the estate in *Richard Penn Hicks*, according to the intent of the devisor; and so far as principles of equity are to have influence, the court will be disposed to carry the act of the legislature into effect, as according with the intent of the devisor.

While the act of 1782 was in force, *Thomas Hicks*, the devisor, died; and it is said, that as that act was not prospective, and he died after it was passed, *Mary*, the first devisee, took an estate tail, which, by the act of 1786, was converted into a fee simple absolute. In construing statutes, the court will endeavour to give every part effect, according to the intent of the legislature. *Verba ita sunt intelligenda ut res magis valeat quam pereat.* The words of the act are all prospective, and apply to all cases which should thereafter arise.

The intent of the legislature is, as expressed in the title of the act, to abolish estates tail; and if there were any doubt of that intent, the title of the act might be taken in aid of the construction. It would be a very rigid construction to say, that the act was not prospective. The court will feel more disposed to consider it as wholly prospective, rather than retrospective, or as taking away existing rights.

But it is said, that the expression of the act of 1786, fee simple *absolute*, is different from the act of 1782, from which it is inferred, that the estates tail were, after the act of 1782, considered as fees *conditional*. It is true, that before the statute *de*

* Co. Litt. 1.

donis, where there was a conveyance or devise to a man and the heirs of his body, if he had heirs, the condition was performed, and the estate became absolute, or if he had no heirs, it reverted to the donor.

The act of 1782 uses the words fee simple. Coke* says, a fee simple is where a man has lands, &c. to hold to him and his heirs for ever. The word *fee* denotes an estate of inheritance, and the word *simple* added to it, denotes it to be an estate absolute and general, and as contradistinguished from a fee conditional, or fee tail. The words in both acts mean precisely the same thing.

Then *Mary*, the first devisee, being, by effect of the act of 1782, seised of a fee simple, or fee simple absolute, and dying without heirs, the estate escheated. Where a person dies without heirs, the estate, on the principle of the feudal law, reverts to the sovereign or people, as the *ultimus hæres*. The estate, in such case, becomes vested in the people, without an inquest of office.*

* People v. Brown, 1 Caines' Rep. 416 —424. Jackson v. Stanley, 10 Johns. Rep. 133—138.

There were other and sufficient reasons for repealing the act of 1782, beside the one which has been mentioned. By the 7th section of the act of 1786, repealing the former act, it is provided, "that all descents and conveyances, which have happened or been made since the passing of the said act, thereby repealed, shall take effect according to the said act." So that the legislature clearly intended to preserve entire the effect and operation of the act of 1782. The devise of *Thomas Hicks*, which took effect subsequent to the passing of the act of 1782, was a conveyance. Every transfer of property, by the act of the party, is a conveyance, or purchase. On the death of *Hicks*, the statute of 1782 operated on the estate tail; converted it into an estate in fee simple; and by the law of escheat that estate was vested in or conveyed to the people, for want of heirs.

It is not to be presumed that the legislature, by the act of 1786, meant to part with any right or estate in them. That is not to be taken by implication or inference. There must be clear and express words to warrant such a conclusion.

*T. A. Emmet*, in reply. By the act of 1787, the legislature expressly guard against any imposition; and convey only such right as may have vested in the state by escheat, reserving all rights existing in others. The act of 1786 was not passed to alter

4

or amend that of 1782, but to repeal it. The law maxim, as to the construction of statutes, is not applicable to a repealed act, for it was no doubt repealed for its imperfection and insufficiency. There is an obvious difference in the language of the two statutes. The one acts only on existing estates tail, and the other operates prospectively on all future estates. It was because the act of 1782 did not act prospectively, that the act of 1786 was passed. We admit, that the legislature may have intended, by the act of 1782, to abolish all estates tail, future as well as present; but not having used proper language to show that intent, it became necessary to pass another act for the purpose. The last act seems to have been passed to meet the very case of the devisor; for if the law of 1782 had not been passed, he would have been seised in fee tail.

NEW-YORK,
May, 1815,

JACKSON
v.
VAN ZANDT.

The 7th section of the act of 1786, repealing that of 1782, provides that "all descents and conveyances which have happened, or been made, since the passing of the said act, hereby repealed, shall take effect according to the said act." It does not say all *escheats* shall take effect. The rights of the citizens are saved and preserved, but the rights of the people, as to escheats, are not saved.

THOMPSON, Ch. J. delivered the opinion of the court. (SPENCER, J. dissenting.) The grounds upon which the plaintiff's counsel rested their argument, to show that the act of 1782 did not reach their case, were,

1st. That the act did not operate prospectively.

2d. That it did not give to the tenant in tail, a fee simple absolute, but only operated as a repeal to the statute *de donis*, leaving the estate a conditional fee, as at common law.

With respect to the first objection; it is true that the act is not drawn with skill and accuracy; and, according to strict grammatical construction, may be liable to the criticism made by the plaintiff's counsel. But the sense and meaning of the act, and the intention of the legislature, cannot be mistaken. It is a well-established principle in the exposition of statutes, that every part is to be considered, and the intention of the legislature to be extracted from the whole, and when great inconvenience will result from a particular construction, that construction is to be avoided, unless the meaning of the legislature be plain. (2 *Cranch*, 386.)

It is a first principle in legislation, that all laws are to operate prospectively. And it appears to me that it would be doing great violence to the intention of the legislature, to limit this act to estates tail then existing. This would be comparatively doing nothing. It would be obviously against the general scope and object of the statute, which was to abolish entails. It is a settled rule of construction, that when the words of a statute are obscure or doubtful, the intention of the legislature is to be resorted to in order to find out the meaning of the words. This intention is sometimes to be collected from the cause or necessity of making the statute. And whenever the intention can be discovered, it ought to be followed, with reason and discretion, in the construction, although it seems contrary to the letter of the statute. (6 *Bac. Ab.* 384.) If this be a sound rule of interpretation, and of which there can be no doubt, it must apply with great force to the case before us. And, indeed, the intention of the legislature is so obvious, that it was not pretended to be denied by the plaintiff's counsel in the argument. The act of 1787, by which the premises in question are given to *Richard Penn Hicks,* is a strong legislative construction of the act of 1782. For it was obviously made for the express purpose of carrying into effect the will of *Thomas Hicks,* according to the intention of the testator. It alleges, by way of recital, that were it not for the late acts abolishing entails, *Richard Penn Hicks* would have become seised in fee tail general of the premises in question. But by such law the estate in fee tail general, devised to *Mary Hicks,* was converted into a fee simple, and she having been born out of lawful wedlock could have no heirs, by means whereof the lands escheated to the people. It is no answer to this argument, that this is a private act, and the suggestion made by the party. This is true where the suggestions are matters of fact, but that is not the case here. There was an alleged construction of a public act, and which the legislature were bound to look to and adopt or reject, as in their judgment the act would warrant. And if the act of 1782 did not extend to this case, most certainly the act of 1787 ought not to have been passed. In my opinion, therefore, the act of 1782 must have a prospective operation, and apply to the will in question.

Nor is the other ground of argument, in my judgment, better founded. This seems to have been suggested by the

difference in the phraseology between the acts of 1782 and 1786. By the former, the estate in fee tail is converted into a *fee simple*, and by the latter, into a *fee simple absolute*. This difference, however, does not extend throughout the act, for, in the second section of the act of 1786, the term *fee simple* is used in the same sense with *fee simple absolute* in the first section. But if it were not so, it would make no difference in the construction of the two statutes. The terms *fee simple* and *fee simple absolute* have one and the same meaning. *Littleton*, (sect. 1.) says, a tenant in fee simple is he who hath lands or tenements to hold to him and his heirs for ever : and it is called fee simple, or *feodum simplex*, because it signifies a lawful and pure inheritance. *Coke*, in his Commentary, adopts the same definition, and says, that *simple* is added to *fee* for the purpose of showing, that it is descendible to the heirs generally, without restraint to the heirs of the body, or the like. And he uses the terms, *simple* and *absolute*, as synonymous, when subjoined to fee. Thus, says he, the more apt division of a fee is into fee simple or absolute, conditional, and qualified or base. For the word simple properly excludeth both conditions and limitations that defeat or abridge the fee. It would be a very strained construction of the act of 1782, to say it only converted fee tails into conditional fees, as at common law. The result of the opinion of the court accordingly is, that the act of 1782 operated prospectively, and of course extended to the will of *Thomas Hicks;* that the fee tail general, devised to his sister, *Mary Hicks*, was, by the statute, converted into an estate in fee simple. And if so, it is not denied but that the defendant has shown a good title to the premises in question, and is entitled to judgment.

SPENCER, J., dissented.

Judgment for the defendant.