Lott *v.* Wyckoff.

KINGS GENERAL TERM, November, 1847. *Strong, Morse, and Barculo,* Justices.

## LOTT and wife *vs.* WYCKOFF.

A testator, whose will took effect previous to 1830, by the second clause thereof devised his real estate unto his four sons, R., A., I. and J., "to them and the heirs lawful from their bodies, share and share alike, and if any of my sons die without lawful issue, all his right, title and interest, in my real estate, shall devolve upon my surviving sons, to be equally divided among them. And if all my sons shall die without lawful issue, then the children of my daughters shall have all my real estate, to them, their heirs and assigns forever, but my grandsons shall have a double share each to each of my granddaughters." *Held* that an estate tail was given to the four sons of the testator by the primary devise to them; and that by virtue of the statute of 1786, abolishing entails, they became seised of the lands devised, in fee simple absolute. *Held also,* that the subsequent limitations of such lands, contained in the will, were null and void. *Barculo, J. dissented;* holding that the statute abolishing entails merely affected the primary devise in tail, by turning it into a fee simple, and left the secondary disposition to operate by way of executory devise.

Where, upon the whole will, there is a devise of an estate tail, either expressly or by implication, the act of 1786 applies. It does not annul the devise, but turns the estate tail into a higher estate. *Per* STRONG, P. J.

The statute, however, does not, in terms, or by necessary implication, extend to determinable fees. *Per* STRONG, P. J.

Where the words of a statute are susceptible of two meanings, one favorable, and the other hostile, to its principal design, the former should prevail, and control the construction. *Per* STRONG, P. J.

Lott v. Wyckoff.

THIS was an action of ejectment, brought to recover lands lying in Kings county, tried at the Kings circuit, in April, 1846, before Edmonds, C. J. A verdict for the plaintiffs was taken, by consent, for one undivided half part of the premises, subject to the opinion of this court on a case made, containing the following admitted facts.

Albert Terhune, being seised of the premises in question, on the 10th day of February, 1797, made his will, by the second clause of which, he devised his real estate unto his four sons, Roelof, Abraham, Isaac, and John, "to them and the heirs lawful from their bodies, share and share alike, and if any of my sons die without lawful issue, all his right, title, and interest, in my real estate, shall devolve upon my surviving sons, to be equally divided among them. And if all my sons shall die without lawful issue, then the children of my daughters shall have all my real estate, to them, their heirs and assigns forever, but my grandsons shall have a double share each to each of my granddaughters."

At the date of the will, the testator had four sons, who are named in the will, and three daughters, viz. Maria, Anne, and Margaret. Maria was then the wife of Stephen Emmons, by whom she then had two sons living, Abraham and Isaac. Maria died in 1799 ; her husband having before also died. The testator died the 7th of April, 1801, leaving him surviving his said four sons and two daughters, Anne and Margaret, and two grandsons, Abraham Emmons and Isaac Emmons.

The four sons went into possession, and so remained until the 13th of January, 1806, when Roelof died without ever having had issue, and leaving his will, by which he devised his share in the premises to his three surviving brothers. Isaac Terhune, another son, died on the 2d of October, 1835, leaving a widow, who still survives, but without leaving any issue, and devising, by his will, all his interest in the premises to his brother John ; and making a provision for his widow, which she accepted in lieu of dower. Abraham Terhune, another son, died on the 19th of October, 1840, without issue, leaving a widow. By his will, he devised, by a residuary clause thereof,

Lott *v.* Wyckoff.

his interest in the premises to his said wife and Maria Lott, one of the plaintiffs, to be equally divided between them. John Terhune, being the last surviving son, entered into possession of the whole of the premises, and held the same until the 29th of June, 1842, when he also died, intestate and without issue. Anne, daughter of Albert Terhune, died in 1826, without leaving any issue. Abraham Emmons died in 1810, without issue. Isaac Emmons, the remaining son of Maria, married Ann Denise, by whom he had a daughter Maria, who is one of the plaintiffs ; her father and mother both being dead. Margaret Terhune, daughter of Albert Terhune, married John Wyckoff, by whom she had twelve children, ten of whom are still living, and Eliza, a descendant of one of the two deceased children, now the wife of Martin J. Johnson.

The plaintiff claims, as heir at law of John Terhune, and as devisee under Abraham's will, four-eighteenths of the premises in question.

*W. J. Cogswell & H. B. Cowles,* for the plaintiffs. I. Upon the death of Albert Terhune, his sons Roelof, Abraham, Isaac and John, became seised of an estate in fee simple absolute in his real estate as tenants in common. 1. Were it not for a statute of this state, passed February 23, 1786, abolishing entails, and the act of 1782, thereby repealed, (*Greenl. L. vol.* 1, 205,) his sons would, by the devise to them contained in his will, have taken an estate in fee tail in his real estate, by express words. (*Co. Litt.* 19, *a. b.* 20 *a.* . *Westm.* 2. 13 *Edw.* 1, *ch.* 1, *cited* 2 *Just.* 332 *to* 335. *Statute of Wills,* 32 *Henry* 8, *ch.* 1. *Cowp.* 234. *Const. of the State of N. Y.* 1777, § 35.) That is to say, they would have taken several estates in tail with cross-remainders in tail. (4 *Cruise,* 4th *Am. ed. by Huntington, tit.* 32, *Deed* 21, *p.* 318, § 59. *Doe* v. *Wainwright,* 5 *T. R.* 427. *Dyer,* 303. *King* v. *Rumbal, Croke James,* 448, *cited in Fearne,* 8th *Lond. ed. by C. Butler,* 243. *Wright* v. *Holford, Cowp.* 31. 4 *T. R.* 710. *Doe* v. *Webb,* 1 *Taunt.* 234. *Cruise, tit. Devise, ch.* 15, §§ 26, 45. 2 *East,* 36.) 2. By the operation of that statute, in force when the will

was made and at the death of the testator, those several estates tail were converted into fees simple absolute. (1 *R. L.* 52. 2 *Greenl. L.* 205. *Anderson* v. *Jackson*, 16 *John.* 403, 404. *Wilkes* v. *Lyon*, 2 *Cowen*, 391, 393. *Lyon* v. *Burtis*, 20 *John.* 489. *Grout* v. *Townsend*, 2 *Hill*, 556. 2 *Denio*, 337. 12 *Fonbl.* 169.)

II. Under that devise, upon the death of either son without issue, his right, title and interest in the real estate whereof Al bert Terhune died seised, would, were it not for the statute of 1786, have vested in possession in the survivors by way of re mainder. (*Chadock* v. *Cowley*, *Cro. James*, 695, cited in *Fearne*, 243. 5 *T. R.* 427. *Spalding* v. *Spalding*, *Cro. James*, 84, *a.* *Dyer*, 303, *a.* *Wright* v. *Pierson*, cited in *Fearne*, 126. 1 *Jarm. on Wills*, 359.) Being limited upon a previous vested estate of freehold, it must have taken effect as a remainder, if at all. (*Doe* v. *Morgan*, 1 *T. R.* 763.) It could not by way of executory devise. (*Fearne*, 385, 284. *Purefoy* v. *Rogers*, 2 *Saund.* 388, *n.* 9. *Com. Rep.* 372. *Wealthy* v. *Boswell*, *Rep. K. B. Temp. Hardw.* 258. *Tenny, ex dem. Agar*, v. *Agar*, 12 *East*, 253 *to* 261. *Wilkes* v. *Lyon*, 2 *Cowen*, 333, 389.) But that remainder being also an estate in tail, could no more live under the operation of our statute abolishing entails, than the previous estate in tail to the sons.

III. The sons of Albert Terhune having become seised, at his death, of an estate in fee simple absolute in his real estate, the subsequent limitations in that devise became inoperative and void. (2 *Bl. Com. ch.* 11, *tit. Estates in Possession and Remainder, &c. p.* 167, § 2. *Plow.* 29.)

IV. The plaintiffs, in right of the plaintiff Maria Lott, are entitled to recover a share in the real estate claimed in the declaration in this cause, equal to four-eighteenths. 1. In the events that have happened, there are thirteen persons entitled to share in the real estate whereof Albert Terhune died seised, viz. the ten surviving children of Margaret Wyckoff, Ann Terhune, widow of Abraham, and Maria Lott and Eliza Johnson, great nieces of John Terhune. 2. Abraham Terhune died seised of an undivided third part thereof, and at his death Ma-

ria Lott became seised of the one-half of his one-third, as devisee under his will, and Ann Terhune of the other half thereof. John Terhune died intestate seised of two other undivided thirds thereof. At his decease, Maria Lott also became seised of the one-twelfth of his two thirds thereof, as one of his heirs at law. (1 *R. S.* 752, §§ 8, 9.) Making the share of Maria Lott, in the whole of the said real estate, equal to four-eighteenths.

V. Should that devise, notwithstanding the statute abolishing entails, be so construed as to allow the share of either son, upon his dying without issue, to go over to the survivor by way of executory devise, then, and in that case, the devise would be executed in John, the last survivor. (*Doe* v. *Founereau, Doug.* 479. *Fearne,* 526. *Cruise, vol.* 6, 466, *tit. Devise,* 38, *ch.* 20, §§ 26, 28.) And the fee would become absolute in him. (*Lyon* v. *Burtis,* 20 *John.* 486, 489. 1 *R. L.* 52.) Then Maria Lott's share in the estate would be equal to one undivided twelfth part thereof, as one of his heirs at law.

VI. The limitations in that devise to the children of the testator's daughters cannot take effect as a remainder, in consequence of our statute abolishing entails. (*Lyon* v. *Burtis,* 20 *John.* 486, *and authorities there cited.*) Nor as an executory devise; as it depends upon an indefinite failure of issue. (*Beauclerk* v. *Doremer,* 2 *Atk.* 308. *Tenny* v. *Agar,* 12 *East,* 253. *Wilkes* v. *Lyon,* 2 *Cowen,* 333, 396 *to* 399. *Patterson* v. *Ellis,* 11 *Wend.* 287, 293.) But if it could, Maria Lott would in that case be entitled to a share in the estate equal to two-eighteenths; taking, under the will of Albert Terhune, the share which her father, Isaac Emmons, son of Maria Emmons, the daughter of Albert Terhune, would take if living. (1 *Jarm. on Wills,* 728, 733, 736. *Goodright* v. *Jones,* 4 *Maule & Sel.* 88. 1 *B. & P.* 250. 2 *Wils.* 29.) But the plaintiffs insist that Abraham Terhune died seised in fee of one undivided third part of the estate, and John Terhune of the other two-thirds thereof; and that the plaintiffs are entitled to recover a share in the premises in question equal to four-eighteenths, for the

Lott *v.* Wyckoff.

reasons above given. (*Gemells* v. *Ward, Willes' Rep.* 211. 3 *D. & E.* 94, 88. 1 *Jarm. on Wills,* 40.)

*John A. Lott & Geo. Wood,* for the defendants. I. The four sons of Albert Terhune would, anterior to the acts of 1782 and 1786, have taken, under the primary devise to them in his will, respectively, an estate tail in the premises devised. (*Cruise's Dig. tit.* 2, *Estate Tail, ch.* 1, § 1, 12. *Id. tit.* 38, *Devise, ch.* 12, § 2, 5.) II. On the death of either one of said sons, his estate tail, as aforesaid, in case he died without leaving issue living at his death, would have gone over to the surviving sons; which would have the effect of making the primary devise in tail subject to a contingent determination upon the happening of that event. Because, 1. The limitation over to the children surviving the first taker, confines the failure of issue to the death of the first taker, at which time the event of survivorship of course takes place. 2. An estate tail, as well as a fee, may be subject to such conditional limitation. (*Cruise's Dig. tit.* 32, *Deed, ch.* 24, § 52; *tit.* 38, *Devise, ch.* 15, §§ 25, 35, 36; *tit.* 16, *Remainder, ch.* 1, § 63, *ch.* 2, § 32; *tit.* 32, *Deed, ch.* 26, § 18. *Davis* v. *Norton,* 2 *P. Wms.* 390.) III. The act of 1786 operating on this will, turned the first primary estate tail into a fee. (*See* 1 *R. L. of* 1813, *p.* 52.) IV. Being turned into a fee, it is still subject to the same contingent determination, viz. upon the death of the first taker without leaving issue living at his death. And upon the happening of that event, the first estate ceases, and the limitation over to the surviving sons takes effect. (*Anderson* v. *Jackson,* 16 *John.* 382, *and cases cited. See Fosdick* v. *Cornell,* 1 *Id.* 440; *Cruise's Dig. tit. Devise, ch.* 20, § 24; 11 *John.* 337; *Cutter* v. *Doughty,* 23 *Wend.* 518.) V. John Terhune, one of the sons, having survived all his brothers, who all died without leaving issue at their death, the whole real property vested in him as such survivor, under the limitation of the will. (*Cruise, tit. Devise, ch.* 20, § 1, 17, 18, 19, 22. *Jackson* v. *Elmendorf,* 3 *Wend.* 222. *Jackson* v. *Christman,* 4 *Id.* 277. *Jackson* v. *Thompson,* 6 *Cowen,* 178. *Jackson* v. *Bellinger,* 18 *John.* 381. *Cutler* v. *Doughty, supra.*) VI. John Terhune

Lott *v.* Wyckoff.

the son taking under the secondary devises upon the limitations over, the parts respectively given in the primary devises, took estates in fee in those several parts, to cease and determine upon his death, without issue living at his death; because, 1. The primary devise being made upon such definite failure of issue, the ulterior devise will be construed to be limited upon the like definite failure of issue. (1 *Ld. Raym.* 203. *Doug.* 264. *Radford* v. *Radford,* 1 *Keen,* 486.) 2. The limitation over on the death of John without issue, being to the children of his sisters, the daughters of the testator, such children (according to a well established rule of construction) as shall be living at the determination of the estate immediately prior thereto will take. (*Ellison* v. *Airey,* 1 *Ves. sen.* 111. *Attorney Gen.* v. *Crispin,* 1 *Bro. C. C.* 386, *and cases collected in Roper on Leg.* 59. *Collin* v. *Collin,* 1 *Barb. Ch. Rep.* 637.) 3. This rule has the effect of confirming the failure of issue to the death of John, and not embracing an indefinite failure of his issue. (*Rex* v. *Jeffrey,* 2 *T. R.* 589. 6 *John.* 385.) VII. Such of the children of the daughters as were living at the death of John, take the whole estate to the exclusion of grandchildren, who never take under that designation, when there are children who answer fully the designation. (*Tier* v. *Pennel,* 1 *Edw. Ch. Rep.* 354. *Jackson* v. *Bradshaw,* 3 *John.* 297. *Jackson* v. *Staats,* 11 *Id.* 246, *and cases cited in Roper on Leg.* 69. 2 *Jarm. on Wills,* 69, 73. *Cutler* v. *Doughty, supra.*) VIII. Maria Lott, the plaintiff, being a grandchild and the child of the daughter Maria, takes no part of the estate.

STRONG, P. J. The counsel for the respective parties, who have argued the case very ably, agree that by the primary devise of the land in dispute to the four sons of the testator, they would have taken an estate tail, if the will could be construed agreeably to the law as it stood previous to any legislation on the subject in this state. By the act of February 23d, 1786, which was passed before the date of the will, they are to be deemed and adjudged to have become seised, each of the undivided fourth part of such land in fee simple absolute.

Lott v. Wyckoff.

The secondary devises to the sons could not, consistently with the statute, take effect as cross remainders ; as no remainder can be limited upon an estate in fee simple. It has been long settled, however, and was the rule previous to the passage of our revised statutes, that, in order to carry into effect the intentions of a testator, such secondary estates, if limited to take effect within the lives of persons in being at the death of the testator, or within twenty-one years and nine months thereafter, would not be adjudged technical remainders, but should be deemed executory devises ; which might be limited by a will, but not by a conveyance *inter vivos.* At common law, where the first devise is in terms of a fee simple, and that is followed by a subsequent gift of the same lands to another, provided the first taker shall die without lawful issue or heirs of his body, the latter provision qualifies the former, and constitutes the whole either an estate tail or a determinable fee. If the secondary estate is to take effect upon an indefinite failure of issue, the first estate becomes an estate tail. But if the devise be predicated upon a failure of issue, which must happen to make it vest within the requisite time for limiting executory devises, the primary estate is a determinable fee. This is by implication. The apparent intention of the testator, in this case, indicated by the first devise, if taken alone, is qualified by the subsequent limitation, showing, upon the whole, a different intent. And taking the whole will together it is evident that he did not design to confer an estate free from all qualifications. Where *upon the whole will* the devise is of an estate tail, either expressly or by implication, the act of 1786 applies. It does not annul the devise, but turns the estate tail into a higher estate. The statute however, does not in terms, or by implication, extend to determinable fees. The primary devises in *Fosdick* v. *Cornell*, (1 *John.* 440,) *Jackson* v. *Staats*, (11 *Id.* 337,) *Anderson* v. *Jackson*, (16 *Id.* 382,) and *Cutler* v. *Doughty*, (23 *Wend.* 518,) which were cited on the argument, were in terms devises of a fee simple ; but they were qualified, and reduced to determinable fees, by subsequent executory devises. They were to take effect, if at all, upon a failure of issue within the prescribed

period.  Clearly there was no devise of an estate tail in either
of those cases, and they have no application to the case now
under consideration.  In the present case, the primary devise
to the testator's four sons was not in terms of a fee simple, but,
as I before remarked, of an estate tail.  That estate was in no
manner restricted or qualified by the subsequent devises of the
same lands.  With or without those devises, the estate tail
given to each would have terminated on his dying without issue,
and not until then, however remote the failure of such issue
might be.  Had the will contained no other than the primary
devise of an estate tail, there would have been a reversion left
in the testator's heirs.  That reversion would have been cut off
by the new estate given by the statute.  The subsequent de-
vises were of estates carved out of what would otherwise have
been such reversion.  What difference could it make whether
that descended to the heirs or was devised to others?  Clearly
the same rule would apply, and the same effect be produced.
The time when the failure of issue of the first takers might
happen, qualified, and could affect, the secondary estates only.
They would be executory devises if the failure must necessarily
happen within the requisite periods ; otherwise they would be
contingent remainders.  But in either case they might have
been barred by a common recovery.  (4 *Kent's Com.* 270.)
Chancellor Kent cites in support of this position, *Fearne*, 66, 67,
107, and *Driver* v. *Edgar,* (*Cowp. Rep.* 379.)  In that case
the devise was to Mary Edgar and the heirs of her body lawfully
begotten, and in case she should depart this life not having
children or child lawfully begotten *living at her decease*, the
estate given to her was to descend and go to the testator's heirs
male.  Mary Edgar suffered a common recovery, and died with-
out issue.  Lord Mansfield said that if she was tenant in tail
to the hour of her death, (which he said she was,) nothing was
so clear as that all conditions limited upon such estate tail
were avoided by the common recovery which had been suffered.
If the act of 1786 should be construed to operate so far only as
to convert the estate tail expressed in the will in question in
this case into a determinable fee, then the subsequent limita-

tions would be valid. But then the absolute power of alienation would be suspended more effectually, and for a longer period, than if such act had not been passed ; as the proprietor of such fee could not cut off the executory devises by suffering a common recovery. This would, in some degree, contravene the principal object of the framers of that act, which was to prevent a long suspension of the power of alienation ; and the presumption is therefore against such construction. It is not conclusive, I admit ; as it frequently happens that reformers create changes, in particular instances, at war with their main object, and against which no effectual provision could well be made. Still, when the words of a statute are susceptible of two meanings, one favorable, and the other hostile, to its principal design, the former should prevail and control the construction. It is true there is nothing in the statute denoting an intention to destroy executory devises. But it is by no means probable that, while endeavoring to annihilate one species of perpetuity, they were solicitous to prolong the suspension of the power of alienation in a more objectionable and less tangible shape. Neither do I think that the terms of the act would be satisfied by confining the change to the first clause of the will. It necessarily destroys any interest in conflict with the new estate. Clearly it has that effect in the case of a technical remainder. Why is it not equally fatal to executory devises ? The terms used to define the substituted estate would seem to preclude the idea that it was to be subject to any restrictions or limitations. That is the construction given to them by the ablest elementary writers. Littleton, quoting from Bracton on the words " *Feodem simplex*," says, " *Simplex idem est quod purum, simplex enim dicitur quia sine plicio, et purum dicitur quod est merum et solum sine additioni, simplex donatio et pura est ubi nulla addita est conditio sine modus. Simplex enim datur quod nullo additamento datur.*" Sir Edward Coke, in his commentaries on Littleton, says, (*vol.* 1, 1 *b.*) that the word simple properly excludeth both conditions and limitations that defeat or abridge the fee. Sir Matthew Hale, in his analysis of the common law, says, (*p.* 57, § 30,) " An absolute fee simple is such as

has no bounds or limits annexed to it, and is an estate to a man and his heirs absolutely forever." Powell, in his work on devises, says, ( *p.* 230,) " A fee simple absolute is where lands are given to a man and his heirs absolutely, without any end or limitation put to the estate." And Chancellor Kent says, (4 *Com.* 5,) " A fee simple is a pure inheritance clear of any qualification or condition. It is an estate of perpetuity, and confers an unlimited power of alienation." Every restraint upon alienation is inconsistent with the nature of a fee simple ; and if a partial restraint be annexed to a fee, as, a condition not to alien for a limited time, or not to a particular person, it ceases to be a fee simple and becomes a fee subject to a condition." A fee simple and a fee simple absolute may be, as I intimated on the argument, and as was said by Chief Justice Thompson in *Jackson* v. *Van Zant,* (12 *John.* 177,) the same thing. But the word " absolute," prefixed to " fee simple" in the statute, is very significant. It was designed to prevent any inference that the substituted estate might be a determinable fee—such as is meant by Sir William Blackstone (2 *Com.* 173,) and other writers, when they say that a fee simple may be limited on a fee simple by way of executory devise. When speaking of such a determinable fee (for it is nothing else) they never characterize it as absolute or pure. Indeed, either would involve a contradiction. Sir Matthew Hale draws a clear distinction between the two estates. After giving the definition of a fee simple absolute, which I have already quoted, he says, ( *p.* 58,) " A limited or qualified fee simple is such as has some collateral matter annexed to it whereby it is made by some means determinable, viz. by limitation or condition." Powell, quoting Plowden, 557, in classifying estates in fee simple, speaks of the two as distinct from each other. The same distinction prevails in all the elementary works which I have had an opportunity to examine.

The statute, by conferring the absolute estate, without any qualification or restriction upon those who would otherwise have become seised of estates tail, necessarily excludes the valid limitation of an executory devise. Chancellor Kent says, (4

Lott *v.* Wyckoff.

*Com.* 270,) " a valid executory devise cannot exist under an absolute power of disposition in the first taker. When an executory devise is duly created it is a species of entailed estate to the extent of the authorized period of limitation. It is a stable inalienable interest; and the first taker has only the use of the land pending the contingency mentioned in the will." The manifest difference between the statutory substituted estate, and a primary estate in fee simple, qualified by a subsequent executory devise, in a will, is this : by the executory devise the testator declares his intention to qualify the estate first given in terms, and it is reduced accordingly. But there is no such intent expressed in the statute. That does not declare that the converted estate may be qualified by, or subject to, an executory devise, but it is peremptory that the estate must be construed to be a fee simple absolute ; and all conflicting estates specified in the will are necessarily destroyed. The language of the act of 1830, (1 *R. S.* 722, § 2,) is different ; that act provides that the converted estate shall be adjudged a fee simple, and if *no valid remainder be limited thereon, shall be a fee simple absolute.* This is very significant to show that the framers of that act supposed that although a remainder could be limited upon a fee, yet that it could not co-exist with a fee simple absolute. Such opinion is also apparent from the revisers' notes. The act of 1830 cannot, however, have any operation in the case, as the estate, whatever it was, vested in the sons before its passage.

In this case I think we are bound to adjudge that the four sons of the testator took, under the primary devise to them, estates in fee simple absolute, and that the subsequent limitations of the lands devised to them are null and void. In doing this we shall defeat some part of the intentions of the testator. There can be no doubt as to those intentions. They are clearly expressed. His principal intention was to give an estate tail to his four sons. The statute defeats that, and it is equally fatal to the other intentions which are at war with its main design. It is undoubtedly desirable that the intentions of the testator should prevail when they can be carried into effect

Lott *v.* Wyckoff.

consistently with the rules of law. But there are many cases, constantly occurring, where that cannot be done; and it is better that such intentions should then fail than that the application of the law should be vague or uncertain.

The plaintiffs are entitled, in right of Mrs. Lott, to the four-eighteenth parts of the lands in dispute, three-eighteenths under the will of Abraham Terhune, and the other eighteenth by descent from John Terhune, the last surviving son of Albert Terhune the testator.

Morse, J. That Albert Terhune intended, by the second clause of his will, to devise to his four sons, as tenants in common, an estate in fee tail in all his real and freehold property, is manifest, in that the words of the devise form a clear and adequate definition of an *estate in fee tail general.* The question submitted to this court for its decision is, what is the legal effect and consequence of this very clear intention of the testator ?

The will was made in 1797, and the testator died in 1801. The first statute abolishing entails was passed in 1782. In 1786 another act abolishing entails was passed, repealing the act of 1782. By the act of 1786, it is declared that all estates tail are abolished, &c. "And further, that in all cases where any person or persons would, if the said act, (the act of 1782,) and this present act had not been passed, at any time hereafter become *seised in fee tail* of any lands, tenements or hereditaments, *by virtue of any devise,* gift, grant or other conveyance heretofore made or hereafter to be made, or by any other means whatsoever, such person and persons, *instead of becoming seised thereof in fee tail, shall be deemed and adjudged to become seised thereof in fee simple absolute.*"

This was the law when Albert Terhune made his will, and at the time of, and long after, his death. That his four sons would have been seised as tenants in common of an estate in *fee tail* by virtue of the said devise made to them, if the above mentioned acts had not been passed, cannot be, and is not, doubted. On the death of their father they became seised of

Lott *v.* Wyckoff.

his real property by virtue of the devise to them, and becoming so seised, this court is commanded *to adjudge* them to have been seised in *fee simple absolute*. It seems to me that the term fee simple signifies that which is inconsistent with the idea of a fee complex, by reason of a condition or otherwise, and that the word absolute was added in the act of 1786, to guard against any possible construction of the term fee simple, founded on the inaccurate application of those words as applied to executory devises; in relation to which it became common to say that a fee simple might be limited after a fee simple. This having become a common mode of expression, it was doubtless supposed that courts might construe the act of 1782 so as to give the words fee simple the inaccurate signification which they had obtained in connection with the doctrine of executory devises, and hence the word absolute was added, much for the like reason that one might speak of a *perfect* circle to insure his being understood to mean a circle, and not a figure of any other shape. The word *perfect* would add nothing to the signification of the sentence, and is only useful as it renders it beyond question that the speaker could not have intended to use the term circle in a loose and inaccurate sense, to express what might in some respects resemble, but which was not, a circle, but to use it in its primary and accurate sense. So the legislature, in the act of 1786, added the word *absolute*, to put it beyond doubt that they used that term in its primary and true sense, as contradistinguishing the fee they were speaking of from all kinds of conditional estates—unloosed—untied—absolved from all restriction and condition.

I concur with Mr Justice Strong, in his construction of the statutes abolishing entails, &c., and of course in the judgment to be given in this cause.

Barculo, J., dissenting. The case turns upon the construction to be given to the second clause of the will of Albert Terhune. The first duty to be performed by the court is, to ascertain the *intention* of the testator; the next is, to carry out that intention, so far as the rules of law will permit. In regard

Lott *v.* Wyckoff.

to the first part, there is but little difficulty. It is quite apparent that the testator intended to give the estate to his four sons and to their children ; and in case any of the sons should die without children living at the time of his death, that the survivors should take the share of the deceased son ; and in case all the sons should die without children, then that the children of his daughters should have the estate. The evènts contemplated by the will have happened. One son after the other has died without children, until all are dead, leaving no issue to take. Hence the question to be resolved, To whom does the estate now belong ?

The counsel for the plaintiffs contend that the four sons took an absolute estate in fee simple, free from all limitations and contingencies. The defendant's counsel, on the other hand, contend that the estate to the sons was subject to a contingent determination in favor of the survivors, in case of the death of any of them without leaving issue living at his death. All agree that the language of the devise would have made the primary estate an estate tail, prior to the statutes abolishing entails. The act of the 23d of February, 1786, which governs · this case, provides, that in all cases where any person, independently of the act, if no act had been passed, would become seised in fee tail, such person shall be deemed and adjudged to become seised in fee simple absolute. Hence the four sons, by virtue of this statute, instead of becoming seised in fee tail, according to the terms of the will, became seised in fee simple. In other words, the statute converts the fee tail into a fee simple.

What then becomes of the contingent estate limited over to the survivors, in case of the death of any son without lawful issue ? Is that also cut off by operation of the statute, or does it survive as an executory devise ? This is a grave and important question, not only as it affects these parties, but more especially as it regards those great principles which lie at the foundation of the law of devises. The slightest departure from them may produce incalculable mischiefs in disturbing and unsettling of titles by will ; by which, perhaps, one half of the

real property in this state is transmitted from generation to generation. I am unable to find any decision of this question in the courts of this country. It was adverted to, but not decided, in *Grout* v. *Townsend,* (2 *Hill,* 554.) In that case, the testator devised to his daughter and the heirs of her body forever, with a limitation over in case of her death without such heirs. Bronson, justice, in delivering the opinion of the court, says: "Whether the limitation over to the children of Nicholas Vischer, in the event of Rachel's dying without heirs of her body, was or was not good by way of executory devise, is a question which, in the event that has happened, can never arise, and we need give ourselves no concern about it." When the same case was decided in the court of errors, (2 *Denio,* 336,) Senator Porter delivered the opinion, in which he says, "the limitation over is void, because it was to take effect *on an indefinite failure of issue.*" Both of these eminent jurists seem to consider it an open question.

From the best consideration I have been able to give the subject, I have arrived at the conclusion that the statute merely affects the primary devise in tail by turning it into a fee simple, and leaves the secondary disposition to operate by way of executory devise. 1. Such a construction will carry out the manifest intention of the testator; which courts are always bound to do, unless it conflicts with some established rule of law. 2. This construction is consistent with, and is required by, settled principles of law in relation to devises. The limitation over, on the death of any son without issue, to the *survivors,* is on a definite failure of issue, and therefore there is no legal objection, on this score, to its being an executory devise. (*Fosdick* v. *Cornell,* 1 *John.* 440. *Anderson* v. *Jackson,* 16 *Id.* 382. *Jackson* v. *Christman,* 4 *Wend.* 277. *Jackson* v. *Thompson,* 6 *Cowen,* 178. *Wilkes* v. *Lion,* 2 *Id.* 333. *Lion* v. *Burtis,* 20 *John.* 483. *Cutler* v. *Doughty,* 23 *Wend.* 518. *Ide* v. *Ide,* 5 *Mass.* 500.)

A fee may be limited, by executory devise, after a fee. (4 *Kent's Com.* 260.) If, therefore, the testator had, by the primary devise, given the estate to his four sons in fee simple, the

limitation over would have been good as an executory devise. Nay, it is conceived that if the testator had used the very words of the statute, and given the estate to his four sons, and declared that they should be seised in *fee simple absolute,* and followed it with a limitation over to the survivors, in case of the death of one without leaving issue, the estate would be subject to the contingent determination. This proposition is too plain to require authorities to be cited. If, then, the testator could not, by using the phraseology of the statute, cut off the limitation, how can the statute do it?

The statute merely converts the *fee tail* into a *fee simple;* cutting off only such remainders as are incident to, and inseparable from, an estate tail. Now, in this case, the limitation over would not, under the English law, have been a remainder after an estate tail. It was, at all events, an executory devise to become operative on any son dying without living issue. (*Driver* v. *Edgar, Cowp. Rep.* 379. *Fearne on Rem.* 66.) It is true, that a common recovery suffered by the tenant in tail before the happening of the event, might bar the estate depending upon the event. (4 *Kent's Com.* 270.) Nevertheless, it is clear that an executory devise in fee could be limited after either a fee simple or a fee tail; and therefore it was not an estate peculiar to either. Hence it follows that when the statute comes in and turns the fee tail into a fee simple, it cuts off all remainders and limitations inconsistent with a fee, but it leaves unimpaired all limitations and contingent estates which are consistent with a fee simple. The statute, as it were, alters the reading of the will. It inserts the term fee simple wherever the testator has used words of entailment. By the light of 'this lamp, the clause in question would read, " I give unto my four sons all my real estate, to them and their heirs, share and share alike, and if any of them die without lawful issue, his share is to go to the survivors." This language would clearly give a fee simple to each of the sons, subject to a contingent determination on his dying without issue, by which the fee would pass to the survivors.

It is to be borne in mind that the very object of the institu-

Lott *v.* Wyckoff.

tion of executory devises was to support the will of the testator; and that by its very definition, " it is a limitation of a future contingent interest in lands, *contrary* to the rules of limitation of contingent estates in conveyances at law." (4 *Kent's Com.* 263.) It is also to be remembered that the statute abolishing entails, had for its object the destruction of *perpetuities* resulting from entailments. Now the reason of the law was never appli-
cable to executory devises; for it is indispensable in those limitations that the estate should be limited to vest within 21 years after a life or lives in being. (4 *Kent's Com.* 271.) That such was the view taken by the legislature, at the last revision, is apparent from the fact, that while exterminating perpetuities, they enacted that where a remainder in fee should be limited upon any estate which would be adjudged a fee tail, according to the law of the state as it existed before the abolition of entails, the remainder shall be valid as a contingent limitation upon a fee, and shall vest in possession, on the death of the first taker without issue living at the time of his death, (1 *R. S.* 722, § 4.)

There is nothing whatever in the act of 1786, to show that the legislature was hostile to, or in any way intended to interfere with, executory devises. On the contrary, the decisions for the last sixty years manifest a leaning towards this mode of fulfilling the intentions of testators. It is true, as contended by the plaintiff's counsel, that the power of alienation may be suspended longer by an executory devise, than by an estate tail, *if the tenant in tail chooses to suffer a common recovery ;* but this has nothing to do with the question. The evil aimed at by the legislature was not the suffering of recoveries; but it was the suspension of the power of alienation, by not suffering a recovery, but by keeping the estate alive for several generations, until all the issue in tail became extinct.

If, then, executory devises were originated for the purpose of giving effect to the intentions of testators; if they are equally consistent with estates tail and estates in fee simple ; and if the statute of 1786 was not directed against them, I am unable to discover the slightest reason for cutting off the estate so limited

Lott *v.* Wyckoff.

by the will in question. On the contrary, I think we are bound to give effect to the intention of the testator by declaring the limitation good as an executory devise ; and that a different construction would be an unwarrantable interference with the designs of the testator, not called for by any rule of construction or principle of law.

If I am correct in this conclusion, then the whole estate became vested in John, on the decease of his three brothers without issue. The wills of the deceased brothers could not dispose of their estates, for the simple reason that the event which gave efficiency to the will, also terminated their interest, viz. death.

The question then arises, who takes the estate on the death of John ? The will declares, " if all my sons shall die without lawful issue, then the children of my daughters shall have all my real estate to them their heirs and assigns forever." Whether the testator actually intended that the children of the daughters should take whenever the issue of the sons should fail, or only in case of such failure at the death of the last son, may admit of some doubt. But there is no doubt that, by the settled principles of law, this is to be deemed a limitation after an *indefinite failure of issue, and therefore void.* (*Anderson* v: *Jackson,* 16 *John.* 382, *and cases there cited.* 4 *Kent's Com.* 476, *and cases cited in note.*) Courts are at liberty, in last wills and testaments, to effectuate the intention of the testator, if by law it can be done. But in ascertaining what that intention is, the construction which has been put upon like words, and the artificial rules, by which it is styled and fixed in the authorities, are to be inflexible guides where they distinctly and pointedly apply. (*Littlebridge* v. *Adie,* 1 *Mason's C. C. Rep.* 234.) It follows, therefore, that on the death of John Terhune intestate, the premises in question descended to his heirs at law. Maria Lott, being one of twelve heirs at law, entitled to share equally in the estate, is seised of one equal twelfth part of the premises in question, and the plaintiffs are entitled to recover accordingly.

Judgment for plaintiffs.