ALBANY,
August, 1806.

Fosdick
v.
Cornell.

* 3 *Caines*, 246.

## Fosdick and others *against* Cornell.

C, by his last will and testament, after charging his estate with the payment of a debt, providing for his wife, &c. devises his real estate to his four sons and a daughter *Elizabeth*, and then adds, " *further, my mind and will is, that if any of my said sons, William, Jacob, Thomas, and John, or my daughter Mary, shall happen to die without heirs male of their own bodies, that then the lands shall return to the survivors to be equally divided between them.* " It was held, that these words did not create an estate-tail, but a limitation over in fee to the survivors, on the failure of the male heirs.

THIS was an action of *trespass*, originally commenced before a justice of the peace, in which a plea of title was put in, and was afterwards removed from the court of *common pleas* of *Queens County*, by *habeas corpus*, to this court. By the pleadings the *title* to the freehold was put at issue between the parties ; and the cause was tried at the *circuit*, held in *Queens County*, on the 25th *September*, 1805, before Mr. Justice *Livingston*, when a verdict was taken for the plaintiffs, subject to the opinion of the court on the following case.

The *locus in quo* was a tract of meadow and beach, at *Rockaway*, in the town of *Hempstead*, known by the name of *Rockaway* beach, which anciently belonged to *Richard Cornell*, under whom the parties claimed title. The plaintiffs claimed under the will of *William Cornell*, son of the said *Richard*, as the legal representatives of the devisees of the said *William*; and the defendant claimed under the will of *Richard Cornell*, the father of

*William*, on the ground that the devise was *in tail.* The will in question was dated the 7th *November*, 1693. The testator first binds his estate for the payment of a certain debt mentioned, and directs, that if his executors did not pay the debt, that then his estate should be sold for that purpose, and the surplus divided among his four sons : he then devises to his *son William and his heirs forever*, the premises in question, and after devising other real estate to his other sons and his daughter *Elizabeth, in fee simple*, and making provision for his wife and daughter *Mary*, he adds the following clause, " *further my mind and will is, that if any of my said sons, William, Jacob, Thomas and John, or my daughter Mary, shall happen to die without heirs male of their own bodies, that then the lands shall return to the survivors to be equally divided between them.* *William*, after the death of his father, entered on the premises in question, and afterwards, in the year 1742, by his last will and testament, devised the same to his sons *William* and *John in fee*, and died without revoking or altering his will. The plaintiffs are, in regard to the premises in question, the legal representatives of the said *William* and *John;* and the defendant, and one *Peter Smith*, mentioned in the pleadings, are the legal representatives *in the male line of descent* of the heir at law of the said *William*, the elder son of *Richard.*

The will of *Richard Cornell* was set forth in the case, but the only question between the parties arose on the above clause. It was agreed, that if the court should be of opinion, that *William* the son of *Richard*, did not take an *estate-tail* in the premises under the *devise* to him from his father, that then judgment might be entered for the plaintiffs ; but if the court should be of opinion, that an *estate-tail* was created by the said devise, then a new trial was to be granted with costs, to abide the event of the suit.

*S. Jones*, for the plaintiffs. If any *technical* ideas suggested by the words, " heirs male of their bodies," be dis-

carded, there can be no doubt, from the perusal of this will, that the testator never meant to create an *estate-tail*. All the other clauses in the will show that the testator had in contemplation, an estate in fee simple. The first devises are in fee, and by the subsequent clause, no more could have been intended than to designate the event, on which the contingency was to take place, and not to use words of *limitation*. The devise over is also to his daughter *Mary*, who is not named in the former clause, as well as to the four sons, to whom the several portions of the estate had been devised. Again, he devises all his estate for the payment of debts, and directs the surplus to be divided among his heirs, all which evidently shows that he had no idea of creating an *estate-tail* with cross remainders, one of the most complicated estates known in the law. But do the words " heirs male of their own bodies," necessarily *ex vi termini*, create an *estate-tail ?* Are they not rather to, be understood as describing an event, on which the estate should be defeasible, that is, in case the devisees should die without leaving *sons*, or *male children ?* The court will feel disposed, so far as the principles and rules of law will warrant, to consider this devise over as an executory devise, rather than as a limitation by way of contingent remainder. It is true, that if this devise over was on the indefinite failure of issue, the contingency would be too remote to render it an executory devise.\* But a contingency, that if a person die without sons or male issue, would be sufficiently near and probable ; and in this case the event must happen within the lives of some or one of the devisees, as the remainder is to the *survivors*, and not their heirs. If *William*, for instance, had a son, the event would happen, and the devise over would never take effect. In fact, the event did happen, for *William* had a son under whom the plaintiffs claim. Thus in the case of *Hughes* v. *Sayer*,† where there was a devise over. to the *survivor*, in case either devisee died without children, the testator was

* 2 *Fearne*, 4th Ed. p. 118.

† 1 *P. Wms.* 533. 2 *Fearne*, 190.

held to mean, a dying without children living at the death of the parent, and consequently, that it was a good executory devise. The case of *Pells* v. *Browne** is analogous to the present. The word *issue* instead of *heirs male*, does not vary the principle. It was the dying without issue, living *W.* that induced the court to consider it not as a contingent remainder in *fee-tail*, but as a limitation of an estate in fee, by way of an *executory devise*. Again in the case of *Hanbury* v. *Cockerill*,† a devise to A and B in fee, and in case either died before marriage, or attaining the age of 21 years, and without issue of their bodies, it was held that the sons took *in fee*, subject to a limitation to the survivor for life, in case of the contingency happening, and so an executory devise. In the case of *Porter* v. *Bradley*,‡ the devise was to his *heirs and assigns*, and if he should die *leaving no issue behind him*, then a devise over, which was held a good executory devise. Lord *Kenyon*, recognising the former decisions on this point, considered the case of *Pell* v. *Browne* as the *magna charta* of this branch of the law.§ I am aware that words of limitation, as heirs male of the body, &c. in a subsequent part of a will, have been construed so as to controul the words creating a *fee simple* in a former part ; but this is always where the words of limitation are so clearly expressed, that there can be no doubt of the intention of the devisor. And where the first part of the devise creates an estate *for life*, and the latter part an estate *in tail*, it will be so construed as to enlarge the estate. But it is impossible, on the principles of such a construction, to reconcile the introduction of the daughter *Mary* into this part of the will, a person having no estate devised to her, which could give operation and effect to an *estate-tail.** Again, the notion of an *estate-tail* is inconsistent with the direction of the testator in the former part of the will, that his estate should be sold to pay his debts. The devise to pay his debts, and the power to sell, whether carried into effect or not, strongly indicate the intention of the testator.

ALBANY,
August, 1806.

Fosdick
v.
Cornell.

* Cro. James, 509.

†1 Roll. Ab. 334.
2 Fearne, 18.

‡ 3 Term, 143.
2 Fearne, 206. note.

§ See also Roe v Jeffery.
7 Term, 589.

* Opinions of C. J. Wilmot, p. 354. 2 Wm. Blk. 728.

* 4 *Term*, 294.
*Cooper* v. *Collis.*
2 *Bos. & Pul.*
314. *Bemfield* v.
*Wetton.* Opin-
ions of *C.J. Wil-
mot, p.* 274.

' 2 *Blk. Com.*
379. *Co. Litt.*
112. *b.*

† 1 *Vesey*, 25.
6 *Term*, 314.

It is a cardinal rule in the exposition of wills, that the inten-
tion of the testator should prevail, unless against some set-
tled rule of law.   Thus words are construed to be either
words of *limitation* or *purchase*, or descriptive of the
event, according as they best agree with the manifest inten-
tion of the testator.*   By adopting the construction con-
tended for, full effect will be given to all the words in the
will, and this clause will be made to harmonise with the other
parts, in which the intention of the testator is expressed in
words that do not admit of the possibility of a doubt.

*Hopkins* and *Radcliff* for the defendant.   The question
is not whether the parties are to take by descent or purchase,
for in whatever way they take, it must be by descent.   The
single point of inquiry is, whether the clause cited from the
will creates an *estate-tail* or not.   After many particular de-
vises, this general clause is introduced, which shows some
method in the will; for the testator first parcels out his es-
tate among the several devisees, and then, by the general
clause, declares what kind of an estate they shall hold.—
The rules of construction in regard to wills are familiar, and
founded in good sense. *   One of these rules is, that where
there are two clauses repugnant to each other, the last must
stand. †   Another and leading rule is, that the whole in-
strument is to be taken together, *ut res magis valeat quam
pereat*.   By the construction contended for on the part of
the plaintiffs, the whole cannot stand.   In the first clause,
a *fee simple* is created, in the latter an *estate-tail*.   The
words creating a remainder over can have no effect, unless
an *estate-tail* be created.   If we suppose a fee simple, not
only the words *heirs male of the body* must be rejected, but
the remainder also must be void.   If both clauses are taken
together, they necessarily import an *estate-tail*.   A fee sim-
ple is first created, which is afterwards changed into an
*estate-tail*.   This *estate-tail* is expressly created, rather
than by implication.   It is not an estate for life, and for
want of heirs of the body, with a remainder over ; but the
estate continues a fee simple as long as there are *heirs male
of the body*, but ceases to be a *fee simple* on failure of such

heirs. Again, an *estate-tail* may be created by implication, and will support a remainder.† And where words in a former part of a will give an estate in *fee simple*, and words in the latter part import an *estate-tail*, the court consider them as creating an *estate-tail*.‡ It is a settled and invariable rule, that where a contingency is limited to depend on an estate of freehold, which is capable of supporting a remainder, it shall never be construed to be an executory devise, but a contingent remainder only. § This doctrine was laid down by Lord *Hale*, and has been uniformly adhered to ever since. The reason why a devise over to survivors is considered as an executoay devise, is, that after a *fee simple* no remainder can be created except by way of *executory devise*. Here there is an estate created, capable of supporting a remainder over ; and according to the rule established by Lord *Hale*, it must be considered as a contingent remainder, and not as an executory devise. Executory devises were introduced in favour of wills, and are an exception to the general rules of common law, as to the creation of estates. It is a devise in fee, but upon the happening of a particular event, limited to another description of heirs. Courts will never consider these estates as executory devises, unless compelled by the common law doctrine, that prevents the creation of a remainder in fee, after a fee.*

It is said, on the other side, that dying without *heirs male of his body*, must be construed as dying without *heirs living at the time of his death*. But though as to *personal estates*, courts have been inclined to adopt this rule, yet in regard to real estates, it is otherwise. † It is true that in some modern cases this distinction has been questioned, particularly by Lord *Kenyon*,‡ who thought it *strange* that there should be a difference, in this respect, between a devise of real, and of personal property. But this is clearly an innovation on the ancient rules, which his Lordship professed to support when first called to the bench, unless he laid stress on the words *leaving no issue behind him.*—— This remark, besides contradicting all antecedent notions, is expressly contrary to the opinions of two distinguished

ALBANY,
August, 1806.

Fosdick
v.
Cornell.

† *Comyns*, 372. *Walter* v. *Drew*.
‡ *Douglass*, 757. *Cro. James*, 696. *Cowper*, 410. 6 *Term*, 314. 1 *Vesey*, 25
§ *Purefoy* v. *Rogers*, 2 *Saunders*, 388. and see the learned notes of Serjeant *Williams*. See also 4 *Mod*. 284. 3 *Term*, 765. *Douglass*, 759. 2 *Vesey*, 616. 2 *Fearne*, 4th Edition by *Powell*, 1, 2, 12, 14, 203, and the *notes*.

* *Comyns*, 372.

† 2 *Fearne*, 194, 197.

‡ *Porter* v. *Bradley*, 3 *Term*, 143.

ALBANY,
August, 1806.

Fosdick
v.
Cornell.

‡ See 4th Ed.
of *Fearne*, vol.
ii. and the *notes*
of *Powell*, from
p. 118 to 209,
and *notes* 197,
199. 1 *P. Wms.*
665.
§ 6 *Term*, 314.

° 2 *Atkyns*, 308,
314.

† *Douglass*,
504. *Roe* v.
*Fonnereau*, 1
*Brown, C. C.*
190.
‡ 2 *Vesey*, 180,
611. *Cowper*,
234. See also 8
*Viner, Ab.* p.
212, §11. 219, §
9. 259, §2. 269,
§9. 272, § 2.

§ *Fearne*, 204.
*note* of *Powell*.

elementary writers, *Fearne* and *Powell*; ‡ and being since
the revolution, can have no binding authority on this court,
more particularly in regard to a will made near a century
ago. Besides, in the case of *Daintry* v. *Daintry*, § where it
was decided, on a devise of *real* and *personal* estate, that the
devisee, by the same words, took an *estate-tail* in the real
estate, but in the personal estate, for life only, or if he had
children, absolutely, otherwise, it went to the uncle, by way
of executory devise, Lord *Kenyon* seems to have forgotten
his former observations about there being no distinction be-
tween real and personal property. Reasons of public policy
may induce a different decision in regard to limitations of
personal property, which do not apply to real estates. All
the cases cited on the other side, except that of *Porter* v.
*Bradley*, in support of their doctrine, are those of devises of
*personal* property. In the case of *Beauclerc* v. *Dormer*, *
though a devise of personal estate, Lord *Hardwicke* observes,
that none of the authorities cited came to the point, that *ex
vi termini*, *dying without issue*, was to be confined to dying
without issue living at the time of the death of the first taker.
*Issue* is considered as a *nomen collectivum*, and the words,
*dying without issue*, always carry *an estate-tail*. † The
books are full of authorities to this point. So a devise over
" *to nephews moietively*," was held to create an *estate-tail*, ‡
and many similar cases might be cited. The case of
*Roe* v. *Scott*, in the Common Pleas, cited by Mr. *Powell*
from the M. S. of Mr. *Fearne*, is very strongly in point.
The testator, after devising his lands to his three sons, and
his *heirs and assigns forever*, and charging the same with
the payments of various legacies, then added, " my will
" and mind is, that if either of my three sons shall depart
" this life *without issue of his or their bodies*, then the es-
" tates of such sons shall go to the survivors or survivor;"
notwithstanding there were many circumstances tending to
show that the testator meant to create an estate in *fee simple*,
it was held that the words created an *estate-tail*. §
    The clause as to the payment of debts, is a mere naked
power, and the devisee will take the estate subject to that

power. Charging an estate with the payment of debts, does not affect the devise.§ There appears to be some inaccuracy in naming the daughter, who is called *Elizabeth* in the first part, and *Mary* in the subsequent clause. The testator gave an estate to *Elizabeth*, and *Mary* was the same person. But if she had no previous estate it would not affect the remainder over.

*Riggs*, in reply. If we look at all the different devises contained in this will, some of which are for life, to pay debts, &c, it is impossible to believe that the testator intended to create an *estate-tail.* The words in the clause, which has given rise to the present question, do not *expressly* create such an estate. If such an estate can be made out, it must be by implication. Hence it has become necessary to examine the numerous authorities on the subject. The *English* courts have favoured *estates-tail,* where the words *issue,* or *heirs* of the body have been used, because it was beneficial to the devisees. That reason can have no influence in this case, for the devisees are not benefited by such a construction. The clause must create an *estate-tail* in all the persons named, or none at all ; in the daughter *Mary,* as well as in the sons : for we cannot intend that *Mary* and *Elizabeth* are the same person. In the other part of the will, the testator gave an estate in fee to *Elizabeth,* and devised one hundred pounds, and half the moveables to *Mary.* Now, no case can be found where an *estate-tail* descendible can pass where one of the devisees has no estate of *freehold,* on which it can be engrafted. Where a limitation is to the heirs of the b dy of the husband and wife, and there is no estate limited to the husband, the words do not give an *estate-tail* to the wife to whom an est te is limited, but are considered as words of *purchase.* An estate cannot be made to descend to the heirs o the body of a person who takes nothing.† In case of the death of the four brothers, *Mary* would not have taken the estate ; there was a other sister who would have been a co-heiress, and another brother. Courts are dis-

ALBANY, August, 1806.

Fosdick
v.
Cornell.

§ *Cowper,* 235. *Bowes* v. *Blackett.*

† *Dyer,* 64. 99. *Lane* v. *Pannell.* 1 *Rolles' Rep.* 238. 317. 438. *Goffage* v. *Taylor. Opinions of C. J. Wilmot,* 362. *Frogmorton* v. *Wharrey.*

posed in their construction of wills, to favour those who, in case of survivorship, would be heirs at law. Again, after the clause in question there are certain easements made, and incumbrances created; *John* and *Jacob* might build, &c. and have two acres each at their election, absolutely. This is inconsistent with the idea of an *estate-tail.* Are there, then, any words so *express* and *technical* that they will admit of no other construction than the one contended for on the part of the defendant? The word *heir,* is construed variously, so as best to carry into effect the intention of the testator. As to the application of the rule that the court are to construe the words so as to create a remainder over, if possible, instead of an executory devise, it may be said, that as *Mary* could take no estate in remainder, there could be no remainder over. Are there any legal objections to considering it as an executory devise? As to time; the estate was to vest in the life or lives of persons in being. Suppose it to be an estate for life over, after failure of male issue; and one dies without leaving such issue, and then another dies, leaving male issue, the estate would go to the survivors; and by the words, equally to be divided between them, they would take in fee. It is, therefore, a good executory devise over to such as should survive those who died, without male issue of their bodies. It is not denied, that dying without issue imports an indefinite failure of issue; but here the estate is to go to the *survivors* on failure of *male* heirs of the body. But the cases which have been cited show that the words *dying without issue,* &c. have been construed to be an *executory devise.* As to the case so much relied on, from *Fearne,*[*]

*[* Fearne, p. 203. Roe v. Scott.]*

it is to be observed, that there was a devise over to the daughter, who, on the death of all the sons would have been heir; and, on the same principle that governed in the case in *Wilmot,* the construction as to an *estate-tail* was adopted for the benefit of the devisees. It is the same as giving an estate to a man and his heirs. This is the true meaning and only sound sense of that case. In

any other sense, it is not law. As to the remark in the opinion of Lord *Kenyon*,† it is to be remembered, that his *lordship* was searching for the intent of the testator, not the technical meaning of the words; and, in that view, his observation, that there could be no difference between real and personal estate was just; for it could not be supposed that an unlettered testator would have in his mind the legal distinction, or intend to distinguish between them. There has been too much refinement by *Fearne, Powell,* and other English lawyers, about remainders, and executory devises. These subtle distinctions have been carried beyond the bounds of reason and common sense. It would be useless to comment on all the numerous decisions, and criticisms of elementary writers. In this country *estates-tail* are not to be favoured. The legislature, by abolishing them, has expressed its decided aversion to that mode of transmitting property. Will the court, by a forced construction, or an adherence to technical nicety, consider this an *estate-tail* down to certain period, when it was turned into a *fee-simple* by the operation of the act of the legislature, and thus permit a quiet possession under an antient title to be disturbed?

† *Term,* 143.

THOMPSON, J. delivered the opinion of the court.— The determination of this question, will depend on the interpretation to be given to the devise over to the surviving devisees: if this were to take effect only on an *indefinite failure of male issue, William* took only an *estate-tail.* But if, from the context, or the whole will taken together, it may be construed to take effect on the failure of male issue, *during the life of the first taker*, or, as applied to the present case, during the life of *William*, the devise over is good as an *executory devise*, and will not in any way affect, or qualify the prior clause in the will, wherein a fee simple is devised to *William*. This is a question of construction, depending on the intention of the testator; and from the whole will taken together, I cannot entertain a doubt, that he meant to provide, that in case

any of the devisees named in this clause, should die with-
out leaving male issue at the time of his death, his por-
tion should be divided among the survivors.    Neither do
I think that there is any stubborn or rigid rule of law that
will militate against this construction.    The cases in the
books on this question, furnish us with many nice distinc-
tions, all, however, made for the purpose of giving effect to
the intention of the testator, which is considered a cardi-
nal rule in the construction of wills.    Lord chief justice
Wilmot said, that he would lay hold of the most trifling cir-
cumstance to give effect to the apparent intention of the tes-
tator. (Keily v. Fowler, Fearne Ex. Dev. 236, 245.)    In
the case of Pells v. Brown, (Cro. I. 590.) which Lord
Kenyon, in the case of Potter v. Bradly, (3 Term, 146.)
terms the foundation, and as it were the magna charta of
this branch of the law, the devise was to Thomas and his
heirs forever, and if Thomas died without issue living
William, then the devise was over to William.    This was
considered a devise in fee to Thomas, and not an estate-
tail; the words living William, were thought sufficient to
make the devise over to William an executory devise.    In
the case of Hughes v. Sayer, (1 P. Wms. 534.) the testa-
tor had devised his personal estate to A. and B. and upon
either of them dying without children, then to the sur-
vivor.    This was held a good devise over, for the
words dying without children, must be taken to be chil-
dren living at the death of the party, and could not mean
an indefinite failure of issue; and the reason assigned was,
that the immediate limitation over was to the survi-
ving devisee: and it was not probable, that if either of the
devisees should die leaving issue, the survivor would
live so long as to see a failure of issue, which, in notion of
law, was such a limitation as might endure forever.

. If the reason assigned for the decision in this case be
solid, it applies with full force to the one before the court;
for here the limitation over is to the surviving devisees.
The only difference between the two cases is, that the one

relates to *personal*, and the other to *real* estate, which, it is contended, requires a different rule of construction, according to the adjudged cases. I find no distinction, however, with respect to the effect which the words *sur-viving devisees*, or any other words, or parts of the will, are to have in ascertaining the intention of the testator.— It is true, that in the case of *Forth* v. *Chapman*, (1 *P. Wm.* 667.) the Lord Chancellor thought the words *leaving no issue*, ought to receive a different construction when applied to real, than when to personal estate ; that as to the former, the words, *ex vi termini*, ought to be considered to mean an *indefinite failure of issue*, and as to the latter, *a failure of issue living at the death of the first taker*. The soundness of this distinction has been much questioned. In the case of *Potter* v. *Bradly*. (3 *Term*, 145.) Lord *Kenyon* rejected it, and said that it would be very strange if these words had a different meaning when applied to real and personal property. If such a distinstion existed in the law it would not agree with the rule, *lex plus laudatur quando ratione probatur;* but it was not founded in law. In that case the court decided, that if lands be devised to *A.* his heirs and assigns forever, and if he die *leaving no issue behind him*, then over, the limitation over is good by way of executory devise. In the case of *Roe* v. *Jeffery* (7 *Term*, 589.) the devise was very analogous to the present; it was to *T. F.* and his heirs for ever, but in case he should depart this life and leave no issue, then to return unto *E. M.* and *S.* or *the survivor or survivors* of them, to be equally divided betwixt them, share and share alike. This was held a good executory devise, for the testator must have meant the devise over, *on failure of issue living at the death of the first taker*. The principal reason assigned for this conclusion was, that the devise over was to persons then in existence ; and Lord *Kenyon* here again takes an opportunity of observing, that he was not prepared to unsay what he had said in *Potter* v. *Bradly*, respecting the distinction taken in *Forth* v.

*Chapman.* Without, however, expressing any decided opinion relative to the correctness of this distinction, I think it is fairly to be collected from the provisions in the whole will, that the testator, in the case now before the court, intended that the devise over should take effect, in case the first taker should die without a son living at the time of his death, and that it was not to depend on an indefinite failure of male issue. The former part of he will, in which the premises in question are devised in fee simple to *William*, is totally distinct and independent of the clause in question ; and though this devise may, by subsequent provisions, be confined and restricted, so as to carry only an *estate-tail ;* yet, in order to give it that effect, it ought to appear clearly that such was the intention of the testator. But there is nothing in the whole will, except the particular clause in question, that tends in the least to show that the testator meant to give to his son *William* an *estate-tail.* He had parcelled out his estate among his children as he thought just and right, giving them, in the first instance, a fee simple interest, which shows pretty clearly what his intention was with respect to the estate he meant to devise : It is most probable if he had intended to devise an *estate-tail*, that he would have done it in the first instance, and not have left it to be raised by implication. The devise over, also being to the surviving devisees, among whom was his daughter *Mary*, to whom he had not in any other way devised any real estate, is another strong circumstance, according to the authorities cited, to show that the clause in question was only intended to provide for the contingency of any of the devisees dying without leaving heirs male living at the time of their death. The opinion of the court, therefore, is, that the plaintiffs are entitled to judgment.

Judgment for the plaintiffs.