## ROBERT S. BURROUGH & WIFE *v.* WILLIAM FOSTER.

A testatrix made to her grandchildren several specific devises " to their heirs and assigns
forever; " and in the eighth clause of her will proceeded:—

" Eightly. I give and devise all the remainder of my real estate unto all my grandchildren,
in equal shares, and to their heirs and assigns forever. And it is hereby provided, and
my will is, that if any of my grandchildren should die, leaving no surviving issue; then
I give and devise all the estate, both real and personal herein given to such grandchild,
unto the survivor or survivors of such as shall die as aforesaid, and to their heirs and
assigns forever: provided, that none of my grandsons shall, in any event, have any of my
personal estate, other than the specific legacies herein bequeathed unto them, as long as
any of my granddaughters, or any of their issue be living. It is also further provided,
and my will is, that if all my grandchildren should die leaving no surviving issue, then
I give and devise all my estate unto two of the daughters of my uncle, Thomas Field,
to wit: Mary and Sally, and unto two of my said uncle's grand-daughters, to wit: Mary
and Elizabeth Thornton, and to their heirs and assigns forever." *Held,* that the grand-
children of the testatrix took estates-tail in her real estate, and not fee-simples condi-
tional upon their dying without issue.

TRESPASS and ejectment to recover possession of a lot of land,
thirty-five feet wide and about one hundred and ninety feet
deep, on the north side of Charles Field Street, in Providence,
and six thirtieth undivided parts of an adjoining lot on the east,
twenty-three feet wide.

To the declaration, which contained two counts, the defend-
ant pleaded, beside the general issue, soil and freehold in Hor-
ace A. Wilcox and Sally B. Wilcox, his wife, in right of the
said Sally, and his title as lessee under them; and twenty
years' possession, under the statute, in said Wilcox and wife
and himself before the date of the plantiffs' writ. The parties
joined in the general issue and in the issue to the country ten-
dered by the plaintiffs upon their traversing the defendant's
plea of title. To the plea of possession the plaintiffs replied,
that the female plaintiff, in whose right the plaintiffs sued, was
sole, unmarried, and an infant, until the 25th day of December,
1848, when she became of age, and that the plaintiffs within
ten years next after commenced the action; which was trav-
ersed by the defendant and issue joined to the country.

At the March term of this court, 1858, the chief justice
presiding, a *pro formâ* verdict was entered by consent, finding
all the issues for the plaintiffs, with the agreement, that if

the court should determine that the estates given by the will of their grandmother, Waite Smith, to the children of Martha Howell, are estates-tail, then the verdict is to stand, if not, to be set aside.

The will of Waite Smith, which was dated on the 5th day of February, 1808, and proved on the 4th day of August, 1819, after making, amongst other things, several specific devises to each of her grandchildren, thus disposes of the residue of her real estate:—

" Eightly. I give and devise all the remainder of my real estate unto all my grandchildren, in equal shares, and to their heirs and assigns forever.

" And it is hereby provided, and my will is, that if any of my grandchildren should die, leaving no surviving issue ; then I give and devise all the estate, both real and personal herein given to such grandchild, unto the survivor or survivors of such as shall die as aforesaid, and to their heirs and assigns forever :

" Provided, that none of my grandsons shall, in any event, have any of my personal estate, other than the specific legacies herein bequeathed unto them, so long as any of my grand-daughters, or any of their issue be living.

" It is also further provided, and my will is, that if all my grandchildren should die, leaving no surviving issue, then I give and devise all my estate unto two of the daughters of my uncle Thomas Field, to wit: Mary and Sally, and unto two of my said uncle's grand-daughters, to wit: Mary and Elizabeth Thornton, and to their heirs and assigns forever."

*Browne*, with whom was *Bradley*, for the plaintiffs.

The question presented in the case is, whether the will, under which the parties claim, creates an estate tail, or an executory devise.

1. The rule of construction is favorable to the creation of an estate-tail, and not an executory devise. *Purefoy* v. *Rogers*, 2 Saunders, 380; *Mussell* v. *Morgan*, 3 Term, 763; *Nightingale* v. *Burrill*, 15 Pick. 110 ; *Parker* v. *Parker*, 5 Metc. 138 ; 1 Jarman on Wills, 778 ; 3 Greenleaf's Cruise, 457, n. 2, 468.

2. The words, " die without leaving heirs," import an indef-

inite failure of issue, and create an estate-tail. *Jones* v. *Owens*, 1 B. & Ad. 318; 17 Vesey, Jr. 482; *Machell* v. *Weeding*, 8 Simons, 4; *Cadogan* v. *Ewarts*, 7 Ad. & Ellis, 636; *Todd* v. *Dewsberry*, 8 Mees. & Welsb. 513; *Ide* v. *Ide*, 5 Mass. 500; 8 Ib. 3; 4 Kent's Com. 274, 276; 2 Jarman on Wills, 418; Lewis on Perpetuities, 192.

3. This construction is not varied by such qualifying words as " survivor," " surviving," or the like. 2 Jarman on Wills, 448; Lewis on Perpetuities, 218, 223; 4 Kent's Com. 276, 279; *Anderson* v. *Jackson*, 16 Johns. 382, 415; *Wilkes* v. *Lyon*, 2 Cowen, 333; *Bell* v. *Gillespie*, 5 Randolph (Va.) 273; *Newton* v. *Griffith*, 1 .Har. & Gill, 111; *Hoxton* v. *Archer*, 3 Gill & Johns. 211; *Denn* v. *Moore*, Coxe, 386; (2 U. S. Dig. 78, Art. 164;) *Haines* v. *Witner*, 2 Yeates, 400; (2 U. S. Dig. 75, Art. 129;) *Clarke* v. *Baker*, 3 Ser. & Rawle, 470; *Casking* v. *Brewer*, 17 Ib. 441; *Eichelberger* v. *Barnitz*, 9 Watts, 450; *Rancel* v. *Creswell*, 30 Penn. 158; *Criley* v. *Chamberlain*, Ib. 161; *Parker* v. *Parker*, 5 Mass. 139; *Massey* v. *Hudson*, 2 Merivale, 133; *Ranelagh* v. *Ranelagh*, 2 Mylne & Keene, 441.

4. The last devise favors the construction which gives to " heirs," in the first clause, the meaning of " heirs of the body," and thus creates an estate-tail. 2 Jarman on Wills, 238; 3 Comyn's Dig. N. 5, " Devise," 398; 1 Cov. & Hughes's Dig. 507, " Devise," XII. 29; *Morgan* v. *Griffith*, 1 Cowper, 234; *Lillibridge* v. *Eddy*, 1 Mason, 239.

5. This construction has been adopted by this court, — acted upon by parties in interest under this will, — and the decision followed in other cases. *Howell* v. *Mason*, Sup. Ct. Prov. March term, 1847; *Tiffany* v. *Potter*, Ib. 1855.

*T. A. Jenckes*, for the defendant.

1. The words of the eighth clause, stating the condition of the devise over, import a failure of issue at the death of each grandchild, and not an indefinite failure of issue. The rule which construes the words " without issue" as importing an " indefinite failure of issue," instead of the failure of issue at the death of any particular person, is an artificial rule, and which should not be extended beyond those forms of expressions in wills, which have received a settled meaning by adju-

dication.   2 Jarman on Wills, 417, *et seq.*   Where the intent
of the testator is clearly expressed, confining the meaning of
such phrases to issue living at the death of any particular per-
son named, that intent should be carried into effect.   The ar-
tificial rule has been abolished in England, and in some of the
states of this country, for the reason that it violates the natural
meaning of language, and defeats the intent of the testator.
1 Vict. c. 26, § 29 ; N. Y. Rev. Stats. ; Va. 1819 ; Miss. 1824 ;
N. C. 1827 ; *Keily* v. *Fowler,* 3 B. P. C. 298 ; *Hall* v. *Chaffee,* 14
N. H. 216.

The following cases show the qualifications of the general
rule, and are applicable to the will in this case.   A limita-
tion  " if  T.  died without issue, living his brother W., then
to W.," refers to a failure of issue at the death of T. (*Pells* v.
*Brown,* Cro. Jac. 590) ; so also the words, if one die " leav-
ing no issue behind him," (*Porter* v. *Bradley,* 3 D. & E. 143,)
and if one leave no issue, then life-estates to the " survivor or
survivors."   *Roe* v. *Jeffrey,* 7 D. & E. 585.

A limitation " to the survivor " imports a definite failure of
issue, in gifts both of real and personal property.   *Fosdick* v.
*Cornell,* 1 Johns. 440 ; *Anderson* v. *Jackson,* 16 Johns. 382 ; *Jack-
son* v. *Blanshaw,* 3 Johns. 292 ; *Jackson* v. *Chew,* 12 Wheat. 153 ;
*Wilkes* v. *Lion,* 2 Cow. 333 ;   *Cutter* v. *Doughty,* 23 Wend. 513 ;
*Dawson* v. *DeForest,* 3 Sandf. Ch. R. 456 ; *Heard* v. *Horton,* 1
Denio, 165 ; *Den* v. *Schenck,* 3 Hals. 29 ; *Cerolle* v. *Cerolle,* 6
Munf. 455 ; *Rapp* v. *Rapp,* 6 Barr. 45 ; *Johnson* v. *Currier,* 10
Barr. 498 ; *Morgan* v. *Morgan,* 5 Day, 517 ; *Couch* v. *Gorham,*
1 Conn. 36 ;  *Maffet* v. *Strong,* 10 Johns. 16 ;  *Richardson* v.
*Noyes,* 2 Mass. 56 ; *Ide* v. *Ide,* 5 Ib. 500 ; *Paterson* v. *Ellis,*
11 Wend. 292 ;' *Abbot* v. *Essex Co.* 2 Curtis, 133 ; *Crane* v.
*Cowell,* 2 Curtis, 178 ; *Abbot ex ux.* v. *Essex Co.* 18 How. 203.

The limitations of the personal estate are clearly referable to
the failure of issue at the death of each grandchild.   The plain-
tiffs contend for two different limitations — an indefinite failure
of issue as to the realty, and a definite failure as to the per-
sonalty.   But the weight and number of authorities is against
this distinction.   *Abbot* v. *Essex Co.* supra ; 2 Atk. 314, Lord
Hardwicke ; 2 Russ. & M. 390 ; 1 Bro. C. R. 188, Lord Thurlow ;

5 Ves. 440, Lord Alvanley, &c., cited in *Abbot* v. *Essex Co.* 2 Curtis, 133.

When one limitation of a devise is taken to be executory, all subsequent limitations must likewise be so taken; hence, if the limitation to the " survivor or survivors " of Waity F. Howell is executory, then the two daughters and grand-daughters of Thomas Field would take by way of executory devise. 6 Cruise, 409 ; *Purefoy* v. *Rogers*, 2 Saund. 388, note. In the construction of this will the declared intention of the testatrix must be effectuated, if by law it may prevail. The different devises must be combined, in order, if possible, to give a uniform construction to the whole will. *Lippitt* v. *Hopkins*, 1 Gall. 454 ; *Hall* v. *Chaffee*, 14 N. H. 216.

BOSWORTH, J.[1]   The question submitted to the judgment of the court in this case is, whether under the will of Waite Smith, Martha Howell took an estate-tail in the premises in controversy.

The eighth clause in said will gives and devises all the remainder of the real estate of the testatrix unto all her grandchildren, in equal shares, and to their heirs and assigns forever. This devise is qualified by a provision, that if either of the grandchildren should die leaving no surviving issue, then all the estate of the testatrix in her will given to such grandchild, is given to the survivor or survivors of such as shall die as aforesaid, and to their heirs and assigns forever. It is further provided, that if all the grandchildren should die leaving no surviving issue, then the estate is given over to certain other persons therein named.

By the first clause of this article in the will, an estate in fee-simple is given to the testatrix's grand-daughters. The subsequent provision, in case of their dying without issue surviving, would, if construed to refer to a general failure of issue, cut the estate down to a fee-tail estate, according to the rule of law. This rule of law was established by decisions of the courts of England immediately after the passage of the statute of entailments, Westminster 2, 13 Edw. I. c. 1, and has continued a

---

[1] The chief justice, having been of counsel, did not sit in this case.

recognized rule in the courts of England and this country, from a period so far back as the year 1285 down to the present time. This rule seems to have resulted from the interpretation of the statute *de donis,* which was very early adopted into our laws, and, subject to its modification by our statutes, may be considered as in force here now. In some of the states of this country, fee-tail estates have been abolished; and this fact may, perhaps, to a considerable extent, account for the contrariety of decisions in reference to the technical words, which, by so many decisions of the English courts, have so uniformly been established as words creating a fee-tail. The rule, that a devise over upon an indefinite failure of issue, — as after the devise to a man and his issue, or after a devise in fee, — is void for remoteness, or as tending to a perpetuity, is not controverted. The question is as to what words import an indefinite failure of issue, as distinguished from a definite failure, or a failure within a precise time fixed. If the devise over is upon a failure of issue at a particular time fixed, as at the time of the death of the first taker, the gift over is good by way of executory devise; for it is not liable to the objection of remoteness, and does not tend to a perpetuity.

Now, it appears from a very numerous catalogue of cases, both in the English courts and in the courts of this country, that the words, die without issue, or without having issue, or without leaving issue, import a general failure of issue; and the limitation over after the death of a person upon a failure of issue which these words imply, is construed as a limitation upon an indefinite failure, unless the force of the words is restrained or their import controlled by other expressions in the limitation, or by circumstances arising on the face of the will in relation to the land, or to the donee or devisee. If the words are, leave no issue at the time of his death, of course the failure intended is defined as a failure at the time of the death. If the words are, die without issue living W., the words import a failure upon the death of the person named in the lifetime of W., or when W. is living. And in one case it was decided, that the words, " if one die and leave no issue behind him " would operate to restrict the limitation to a failure at the

death of the first taker. *Porter* v. *Bradly*, 3 Durnf. & East, 143. In neither of these cases can we find authority for restricting the words of this will to a failure of issue at the death of each grandchild.

In the case of *King* v. *Rumball*, (Cro. Jac. 448,) there was a devise of lands to the wife for life, remainder to three daughters, and if any of them died before the others, then the others to be her heirs, and if they all died without issue, remainder over. It was held that the daughters took vested estates-tail. In the case of *Chadock* v. *Cowley*, Cro. Jac. 695, there was a devise to A. and B. severally in fee, and that the survivor should be heir to the other, if either of them died without issue; and the court held, that A. and B. took estates-tail, with cross remainders over, in fee.

The words used here are, " die leaving no surviving issue." The words, die leaving no issue, by all the English decisions, import a general failure of issue. There is nothing here to limit their import but the word " surviving." How this changes the meaning of the words we do not see, and there is no decision making the use of this word an indication of an intent to limit the failure to a definite period. If he dies and leaves issue, he must leave them surviving. The question is, whether the estate is to go over in the event of there being no surviving issue at the period of the death, or none surviving at some remote period, whenever it shall occur; and it seems to us that all the logic which can be urged in favor of the interpretation so uniformly put, by the English decisions, upon the one set of words, is equally potent when applied to the other.

There is a class of decisions in this country to which we are cited, which have assumed to deny the interpretation given to these words, and to hold them to import a failure of issue at the death of the first devisee. The case of *Fosdick* v. *Cornell*, 1 Johns. 440, is the leading case of this class. That decision has been followed in the state of New York, until it has now become the settled law of that state. In the case of *Anderson* v. *Jackson*, 16 Johns. 382, the question arose in the court of errors of that state, and the previous cases in the supreme court were reviewed, and the doctrine established by them affirmed.

In that case Chancellor Kent, who had been chief justice of the supreme court when the case of *Fosdick* v. *Cornell* was decided, reconsiders the subject, and in a very able and thorough examination of the state of the law and the whole current of decisions from the year 1285 downwards, shows, that the supreme court had departed from the law in the decision of the case; acknowledges his error; and gives his opinion against the decisions in which he had previously joined. The majority of the court, however, differed from him, and decided the case (if we may judge from the only opinion given on that side of the case, the opinion of a senator) mainly on the authority of the case of *Fosdick* v. *Cornell*, and other cases in the supreme court, which Chancellor Kent, who participated in them, deemed to be founded on error, and which he shows in his opinion, conclusively, as we think, contradicted the whole current of the English cases. At that time, there had been three decisions in the supreme court of New York affirming the doctrine decided in *Fosdick* v. *Cornell*, and the court of errors felt themselves not warranted to interfere in disturbing titles which might have been acquired under the repeated and solemn decisions of the supreme court. If this consideration had weight with the majority of the court of errors in that case, such a consideration should, we think, for much stronger reasons, weigh upon the deliberations of this court, in leading us to a conclusion opposite to the one to which they arrived. In this court, there have been at least three decisions to the effect that the form of words in this will, and similar words, operate to create an estate-tail, because they import an indefinite failure of issue. One of these decisions was in a case arising upon the words of this very will. These decisions have doubtless been made under the authority of the English decisions growing up after the enactment of the statute *de donis*. These decisions, and the statute, so far as it applies, are, we apprehend, a part of our common law. If the New York courts ought, upon the doctrine of *stari decisis*, to rest upon the decisions of their supreme court, though they may vary from the English decisions; ought this court to run the risk of unsettling the law and of disturbing titles under the law as heretofore settled, by overturning

their own decisions, when, too, those decisions are found to be in accordance with the English cases? It is said that the rule which construes the words, without issue, and the like, as importing an indefinite failure of issue, is an artificial rule; and that it has been abolished in England, and in some of the states of this country, for the reason that it violates the natural meaning of the language, and defeats the intent of the testator. The fact that the rule has been abolished by statute, shows that prior to the statute it had become established; and if in England and other states it has been found necessary to abolish the rule by legislative acts, we ought not to attempt to do the same thing by judicial construction. In truth, this rule of law has been so long settled by the decisions of courts, that we are authorized to believe, that whenever the words are used in a will, they are used with reference to the construction which the law has put upon them. Whether the construction is the natural one or not, it is the legal one; and if we change it by a judicial interpretation now, we may interfere with titles acquired on faith of the law as heretofore settled, and create mischiefs which we may not foresee.

We therefore overrule the exceptions, and judgment must be rendered upon the verdict.